[No. 30583. Department One. December 10, 1948.]

WILLIAM ZACKOVICH, *Respondent,* v. VERA JASMONT,
*Appellant.*[1]

[1]Reported in 200 P. (2d) 742.

*Reischling & Lurie* and *Riddell, Riddell & Hemphill,* for appellant.

*John Kelleher* and *Tracy E. Griffin,* for respondent.

STEINERT, J.—Plaintiff brought suit to recover upon two promissory notes alleged to have been executed and delivered to him by the defendant, but thereafter purloined or by unlawful means regained by her. Defendant denied the allegations of the complaint with respect to the execution, delivery, and repossession of the notes, and, by way of affirmative defense, alleged that any promissory note executed by her and held by the plaintiff was without consideration and was null and void. Upon joinder of issues, the cause was tried before a jury, which returned a verdict for the plaintiff in the full amount of the notes, with accrued interest. Defendant's motion for a new trial was denied, and judgment was thereupon entered on the verdict. Defendant appealed.

At the time of the transaction out of which this lawsuit arose, respondent, William Zackovich, was a widower, approximately seventy-one years of age. Appellant, Vera Jasmont, was a widow, of the age of fifty-three years. Both of these parties were natives of Lithuania, but had resided in this country for many years and had known each other socially for some time. Although each of them seems to have had considerable business experience, growing out of the acquisition and disposition of real property, neither of them could read or write English other than their own signatures.

Respondent owned a building used for stores and a hotel, located at 703 Columbia street, in Seattle. On November 9, 1943, he and appellant entered into a real-estate contract, wherein respondent agreed to sell, and appellant agreed to buy, this Columbia street property, according to the description and upon the terms set forth in the contract. We shall make mention of those provisions of the agreement which are material to this controversy.

Paragraph No. 2 of the contract provided:

"The full purchase price of said property is and shall be the sum of TWENTY-FOUR THOUSAND DOLLARS ($24,000.00), *of which the sum of* TWELVE THOUSAND DOLLARS *($12,-000.00) has been paid in cash, the receipt whereof is hereby acknowledged by the vendor* [respondent], and the balance of TWELVE THOUSAND DOLLARS ($12,000.00) shall be paid as follows: The sum of THREE HUNDRED DOLLARS ($300.00) on the 25th day of January, 1944, and the sum of THREE HUNDRED DOLLARS ($300.00) or more on the 25th day of each and every calendar month thereafter until the full purchase price has been paid, together with interest thereon at the rate of five (5) per cent per annum." (Italics ours.)

Paragraph No. 3 of the contract provided that the vendee (appellant) was to have possession of the property on January 1, 1944.

Paragraph No. 7 provided that the buildings located on the premises should be kept insured by the vendee for a sum not less than thirteen thousand dollars, payable to the vendor, as the insured, with a rider showing the vendee's interest in the property, the policy or policies to be delivered to the vendor and retained by him until full payment according to the contract had been made.

Paragraph No. 10 contained a provision to the effect that, when the vendee had fulfilled all of the conditions of the contract, a good and sufficient warranty deed would be executed by the vendor and delivered to the vendee.

Paragraph No. 12 recited that no modification of the contract should be valid unless endorsed thereon or attached thereto and signed by the parties.

From this point on, in the statement of the case, the evidence is, for the most part, in violent dispute, creating an issue upon which the jury was required to accept the version of the one party or that of the other, and render its verdict for the party whose evidence it believed.

The facts as borne out by respondent's evidence, and as the jury was entitled to find them from all the evidence, are as follows:

The contract here involved was drawn in duplicate and signed by the parties on November 9, 1943, in the office of Mr. Elias A. Wright, attorney for the respondent. However, neither of the signed copies was at that time delivered to the appellant. The reason for this was that appellant did not then have the money, twelve thousand dollars, with which to make the down payment, as called for in paragraph No. 2 of the contract, quoted above. Instead, Mr. Wright handed both copies of the contract to his client, respondent, with instruction to him to deliver one copy to appellant at such time as she should make the required down payment.

During the months of November and December, 1943, and the first half of January, 1944, respondent was engaged in efforts and proceedings to evict a certain Mrs. Alice Horn, who was the lessee of the hotel premises, and who did not surrender possession thereof until January 15, 1944. Thereafter, for some weeks, respondent and appellant worked together in the hotel, getting it ready for occupancy.

In the meantime, on January 25, 1944, appellant executed and delivered to respondent her promissory note for seven thousand dollars, bearing interest at the rate of five per cent per annum, and payable on or before one year from date thereof, as part of the purchase price and down payment on the real-estate contract. On that same date, appellant took possession of the hotel premises. However, since she had not yet paid the full down payment called for by the agreement, appellant was not at that time given a copy of the contract.

After appellant had taken possession of the hotel premises on January 25th, respondent rented one of the rooms therein and occupied it as her tenant.

On March 8, 1944, respondent and appellant again met, and on that day appellant executed and delivered to respondent her second promissory note, in the sum of $7,984, with interest at the rate of five per cent per annum, payable on or before one and one-half years from date thereof. This note covered the balance of $5,000 still owing on the down payment specified in the contract and $2,984 representing the amount of money that respondent had expended for improvements and betterments on the property between November 9, 1943, the date of the real-estate contract, and March 8, 1944, the day upon which the balance of the down payment on the contract was made.

At that same time and place, respondent in turn delivered to appellant one of the two signed copies of the real-estate contract, together with the bills and statements for the improvements and betterments referred to above. Thereafter, respondent, as tenant, continued to occupy a room in the hotel, paying appellant three hundred dollars, in advance, for occupancy until January 8, 1945.

On November 6, 1944, appellant paid to the respondent twelve thousand dollars, the balance of the total purchase price owing on the contract, and at the same time respondent delivered to the appellant a warranty deed to the property, as called for by their written agreement. The deed had been prepared a short time before by respondent's attorney, Mr. Wright. Within a day or two after this transaction, the insurance policies covering the property were transferred from respondent to the appellant, as the insured.

The sale and transfer of the property having been fully completed in the manner above described, respondent thereafter desired some security for the two notes which appellant had previously executed. The parties discussed the matter, and appellant agreed to give a mortgage on the property which she had just purchased from the respondent. Accordingly, on December 1, 1944, they went to the office of Mr. Wright to have a mortgage drawn. Respondent brought with him the two promissory notes. What transpired at that time was described by Mr. Wright in his testimony as follows:

"They came in my office, I have a long table and I sat behind it, and Mr. Zackovich sat down on what would be my right, and Mrs. Jasmont did not sit down. Mr. Zachovich came in and said he wanted a mortgage drawn, and he took out of his pocket a note—one note—and said he wanted a mortgage drawn to cover some notes, and he pulled this note out of his pocket and handed it to me, and I just looked at—was looking at it, and saw what it was, and I saw the amount of it, and I was holding it like that (indicating) and Mrs. Jasmont, who had not sat down, reached over and grabbed it out of my hand and ran out through the door with the note. I remember the amount of the note."

A little later in his testimony, the witness stated that the amount of the note was seven thousand dollars. Mr. Wright's testimony corroborated that of the respondent with respect to appellant's conduct in Mr. Wright's office.

In a preliminary deposition given by appellant, approximately a year before the trial, she testified that on one occasion, shortly before she received her deed, she and respondent were in Mr. Wright's office, where she was supposed to have the deed delivered to her; that a note "for twelve thousand dollars" which she had given was there exhibited; and that an argument ensued between herself and appellant, in consequence of which she took the note and, after leaving the office, destroyed it.

At the trial, however, appellant changed this testimony, and stated that the document which she had taken from Mr. Wright's office and destroyed was not a note, but a receipt of some kind. Her testimony on that subject was evasive, contradictory, and very unsatisfactory.

Respondent further testified that, after this episode, he put the second note, the one for $7,984, in a trunk which he kept in his room at the Columbia street hotel; that the trunk was not locked, and in September, 1945, he discovered that the note was missing; and that, upon making inquiry of appellant concerning its disappearance, she admitted that she had opened and searched the trunk and had taken the note. Respondent's testimony with regard to appellant's admission that she had abstracted the note was corroborated

by a witness who claimed to have been present during the conversation between respondent and appellant.

Throughout the succeeding months, respondent made frequent requests of the appellant that she pay the amount of the notes, or at least that she return them to him. At first, appellant promised to pay the amounts as soon as she had sold the property, which she was then trying to do. Later, however, she demanded, as a condition of payment, that respondent give her an interest in certain other real property which he in the meantime had purchased.

It is to be understood that our statement of the facts, as hereinabove set forth, is taken from the evidence adduced by respondent. Appellant strenuously denied that she had ever executed or delivered the two promissory notes referred to above, or had ever heard of them until this lawsuit was instituted by respondent; she also denied, of course, that she had ever had access to respondent's trunk, or had ever taken any note therefrom.

Appellant's version of the transaction with reference to the purchase of the Columbia street property was that on November 9, 1943, she made the down payment of twelve thousand dollars, *in cash*, as recited in the real-estate contract, and that in November, 1944, she paid the balance of twelve thousand dollars, in one lump sum, likewise in cash. It will be noted that the contract called for monthly payments of three hundred dollars each, beginning January 25, 1944. Evidently she made none of these installment payments falling due between January and November, 1944.

Contrary to appellant's repeated statements that she made the final payment of twelve thousand dollars *in cash,* the evidence shows that she made that payment by a cashier's check, drawn to her favor, and by her endorsed over to the respondent at about the time she received the deed to the property. The check appears as an exhibit in the case. The jury had the right to believe that her story of having paid the last twelve thousand dollars in cash was invented simply to support her claim that she had also paid the first twelve thousand dollars in cash.

There are some circumstances, presented by the evidence in the case, which, upon the cold record, might cause one to doubt certain phases of respondent's testimony, particularly with respect to the disappearance of the second note here involved, as testified by him. However, the jury heard and saw all the witnesses, and, as its verdict indicates, accepted respondent's evidence concerning the material facts as being true. Counsel for appellant make no contention that the evidence was insufficient to take the case to the jury. In this connection, it should be stated that appellant's present counsel did not try the case, but came into it as substituted attorneys after the judgment had been rendered.

By her assignments of error, appellant complains (1) that the trial court erred in denying her motion to reopen the case for the purpose of taking additional testimony; and (2) that the court erred in giving certain instructions, four in number.

The evidence upon the trial was concluded on Friday, November 14, 1947, and both sides rested. Adjournment was taken to Monday, November 17th. Upon the opening of court on the latter date, counsel for the appellant moved to strike all evidence relating to the notes here in question, and challenged the sufficiency of the evidence. The court denied the motion and overruled the challenge.

Counsel then presented a motion to reopen the case to permit Mrs. Alice Horn, mentioned above, to testify. In support of that motion, counsel made the following statement:

"She [Alice Horn] will testify she was the lessee of the Columbia Hotel before it was sold; that she was well acquainted with William Zackovich; that in July, 1946, she met Mr. Zachovich and asked him how he came out with the Columbia Hotel, and he said that it was sold, and that he had all of his money, and everything was all right, and he was out of it. That is the substance of what she told me not over ten minutes ago."

Mrs. Horn was the party whom respondent had evicted from the premises in January, 1944, on the sale of the property to the appellant. The record herein discloses that Mrs.

Horn was present in court during the trial of the case, before the parties rested. Moreover, the record also shows that four other witnesses had already testified to these same purported admissions by the respondent. The witnesses so testifying were Evelyn Cochran, Alice Teel, Agnes Denecke, and H. W. Grunden.

A motion to reopen a case is addressed to the sound discretion of the trial court, and the manner of exercising that discretion will not be disturbed by this court except for manifest abuse. *Tollefson v. Solie,* 137 Wash. 468, 242 Pac. 1103; *First Bank of Cordova v. Tjosevig,* 138 Wash. 231, 244 Pac. 736; *Dorian v. Boone,* 152 Wash. 681, 279 Pac. 107; *In re Hamilton's Estate,* 182 Wash. 81, 45 P. (2d) 36; *Niemeier v. Rosenbaum,* 189 Wash. 1, 63 P. (2d) 424; *Cox v. United Brotherhood of Carpenters & Joiners of America,* 190 Wash. 511, 69 P. (2d) 148; *Beadle v. Barta,* 13 Wn. (2d) 67, 123 P. (2d) 761.

Appellate courts will not ordinarily hold that the trial court abused its discretion in refusing to reopen a case for further testimony, when such testimony is cumulative. *In re Krilich's Estate,* 122 Wash. 306, 210 Pac. 788, 215 Pac. 9; *In re Hamilton's Estate, supra.*

We find no abuse of discretion on the part of the trial court in refusing to reopen the case.

Appellant next complains of instructions Nos. 7, 10, 12, and 21 given by the trial court, reading as follows:

No. 7. "If you find from the evidence that notes [were] given for down payment of real property, this would constitute a good and valuable consideration sufficient to support the obligation to pay."

No. 10. "You are instructed that the contract given by plaintiff [respondent] to defendant [appellant] reciting the payment of $12,000.00 as the down payment on the purchase of the hotel property may be clarified and explained by showing that the money was received by the plaintiff in the form of promissory notes and not actually in currency."

No. 12. "The mere fact that plaintiff has not produced the notes in question in this case in court or introduced them into evidence in this case is not to be taken as an ad-

mission on his part that there are no notes, if he produces a fair preponderance of evidence which convinces you that defendant's actions are the cause of the notes being unaccounted for."

No. 21. "If you find from the evidence in this case that the two notes alleged by plaintiff to have been converted by defendant were given by defendant as part of the purchase price of the Columbia Hotel property, then I instruct you that they were given for a good and valuable consideration as that term is used in these instructions."

The exceptions taken to instructions Nos. 7 and 21 were that they violated the parol evidence rule. The exceptions taken to instructions Nos. 10 and 12 were that they not only violated that rule, but also constituted a comment on the evidence, in that they assumed as a fact that the notes were executed by the appellant in favor of the respondent.

If we correctly understand appellant's contention with respect to the alleged violation of the parol evidence rule, as claimed in the exceptions taken by her, it is that the jury was permitted by the instructions to find that the initial down payment of twelve thousand dollars on the contract was not made *in cash*, as acknowledged in the contract itself, but was made by the execution, delivery, and acceptance of the two promissory notes, and that such notes constituted good and valuable consideration. This, appellant apparently contends, sanctioned an attempted modification of the written real-estate contract in violation of the parol evidence rule.

It should be borne in mind that this action was not instituted to recover upon, or to enforce the terms of, the original real-estate contract, nor was it an action in which it was sought to repudiate any of the terms of that contract. The original contract had been fully performed and had been supplanted by a final deed. The present action is simply one to recover upon two promissory notes, alleged, and believed by the jury, to have been given in payment of the initial twelve thousand dollars of the purchase price of the property. So far as this action is concerned, the subsequent execution and delivery of these two notes constituted an

independent transaction. Consequently, there is no question here of a violation of the parol evidence rule.

However, if the two notes nevertheless be considered in connection with, and as relating to, the written contract, still there is no violation of the parol evidence rule.

It has become an established principle in this state, as elsewhere generally, that parol evidence is admissible to show the true consideration of a written agreement. *Van Lehn v. Morse,* 16 Wash. 219, 47 Pac. 435; *Don Yook v. Washington Mill Co.,* 16 Wash. 459, 47 Pac. 964; *Windsor v. St. Paul, Minneapolis & Manitoba R. Co.,* 37 Wash. 156, 79 Pac. 613; *Warwick v. Hitchings,* 50 Wash. 140, 96 Pac. 960; *In re Tveekrem's Estate,* 169 Wash. 468, 14 P. (2d) 3.

In 32 C. J. S. 869, Evidence, § 948, appears this statement:

"As a general rule the recitals of a written instrument as to the consideration are not conclusive, and it is always competent to inquire into the consideration and show by parol or other extrinsic evidence what the real consideration was."

Appellant's first exception, hereinabove discussed, is not well taken.

We inquire next whether the instructions set forth above constituted a comment on the evidence. Appellant's contention is that the instructions, by the manner of their expression, assumed the existence of the promissory notes, which was the basic question of fact to be determined by the jury.

Instructions given by a trial court must, of course, be considered as a whole, and if, when so considered, they fairly state the law, there is no prejudicial error, even though certain detached statements therein may be technically erroneous. *O'Connell v. Home Oil Co.,* 180 Wash. 461, 40 P. (2d) 991; *Forquer v. Hidden,* 191 Wash. 638, 71 P. (2d) 1000; *American Products Co. v. Villwock,* 7 Wn. (2d) 246, 109 P. (2d) 570, 132 A. L. R. 1010; *Herndon v. Seattle,* 11 Wn. (2d) 88, 118 P. (2d) 421.

Throughout the instructions, twenty-three in number, the trial court made it very plain to the jury that the principal issue in the case was whether or not the appellant had exe-

cuted and delivered to the respondent the two notes here in question; and, further, that the burden of proving those facts by a fair preponderance of the evidence lay upon the respondent. Then, in instruction No. 5, the trial court specifically told the jury that the burden was upon the respondent to prove by the greater weight of the evidence that the appellant signed a note or notes for the amounts alleged in the complaint, freely and voluntarily and with full knowledge of the character thereof, and actually delivered such notes to the respondent after they were signed; further, that, if respondent failed to prove those elements by the greater weight of the evidence, the jury should return a verdict for the appellant.

In *Haaga v. Saginaw Logging Co.*, 169 Wash. 547, 14 P. (2d) 55, we said:

"While the provision of the constitution [Art. IV, § 16, commanding that judges shall not charge juries with reference to matters of fact, or comment thereon] is rather strictly construed, its purpose is simply to prevent the judge from influencing the jury in their findings upon questions of fact. While the judge may not state or assume in his charge that any particular fact is conclusively proven, yet, in order to render the statement an assumption violative of the constitutional mandate, it must be with reference to some fact adverted to by the judge in his instructions either directly or in such a way as to lead, or tend to lead, the jury to infer that such fact was an established one."

The court then continued:

"We do not believe that the language in this instruction is subject to such criticism or in any way productive of such result. It is only by a refined, technical reasoning and analysis that one could arrive at appellants' interpretation of the instruction; it is difficult to see how the jury would ever place such construction upon it."

This same language, as last quoted, can well be applied to the present case.

A reading of the instructions as a whole makes it clear, beyond cavil, that the trial court did not assume, nor indicate to the jury that it assumed, the existence of the

two promissory notes, but expressly and definitely submitted that issue to the jury to be resolved by it, upon the evidence; it is equally clear that the jury could not possibly have been misled to infer that such fact was an established one, or that the trial court so considered it.

Appellant's final contention, directed also toward instruction No. 10, *supra,* is that there was no evidence whatever to support a finding that the notes, if existent, were to be considered as down payment.

The principal point in the case was whether appellant had made the down payment in cash, as she contended, or whether the two promissory notes were given and received in lieu of such down payment, as contended by respondent. The testimony of the respondent is capable of no other interpretation than that the notes were given, and accepted, to take the place of the cash payment provided in the contract; and all of the evidence produced by the respondent is consistent with that theory, and only that theory.

This disposes of all of appellant's assignments of error. The judgment is affirmed.

MALLERY, C. J., BEALS, ROBINSON, and SCHWELLENBACH, JJ., concur.