[No. 37126. Department Two. November 12, 1964.]

HERBERT S. KERR *et al., Respondents,* v. NORVALL H. COCHRAN *et al., Respondents,* KEITH B. COFER *et al., Appellants.**

*Reported in 396 P. (2d) 642.

*Kahin, Horswill, Keller, Rohrback, Waldo & Moren*, for appellants.

*Robert L. Butler, Clay Nixon, John A. Henry*, and *Wayne Murray*, for respondents.

DONWORTH, J.—This case arose out of an automobile accident involving four cars. The evidence presented to the jury was in direct conflict on some critical factual issues, but the following will serve as a general description of the several alleged collisions.

Car number one was owned by plaintiffs Kerr and was driven by Mr. Kerr, with Mrs. Kerr as a passenger. It was proceeding south on Highway 99 between Seattle and Tacoma, in the inside lane, about 6 p.m. on April 21, 1961. At that time the three cars of the various defendants (both other respondents and appellants) were headed north on

the highway, approaching its intersection with South 222nd Street in King County.

Car number two, the first car headed north, was driven by Mr. Cochran, and was owned by Mrs. Turner, a passenger in the car. It was traveling in the inside lane.

Car number three, the second car headed north, was driven by Mrs. Cofer. As stated later in this opinion, there was a minimum of evidence as to the ownership of this car and whether it belonged to Mrs. Cofer or to the community. There was testimony that this car was traveling in the inside lane at the time of impact, although Mrs. Cofer testified that she was in the outside lane until her car was hit from behind.

Car number four, the third car headed north, was driven by Mr. Osborne, who had his family with him. This car was owned by Mr. and Mrs. Fabijan. It was traveling in the inside lane, and Mr. Osborne claims to have been following the Cofer car in this lane for some distance.

The accident occurred about 40 feet south of the intersection. The pavement was wet from a recent rain. There were steady streams of heavy traffic in all four lanes, two headed north and two headed south. The northbound inside lane, in which the three cars of the defendants were apparently traveling just prior to the chain of collisions, was blocked by two other cars also traveling north, the first one of which was awaiting an opportunity to turn left at the intersection. Cars number two, three, and four were each presented with the problem of stopping as they approached the car in front. The sequence and effects of each impact are disputed facts. However, the accident may be basically described as follows:

Car number one (Kerr car) was struck approximately head on by car number two (Cochran car) after car number two had crossed the double center line into the oncoming traffic lane. Car number two struck car number one either by its own motion or by being pushed into car number one after it was struck by car number three (Cofer car).

Whether car number one and car number two had already collided prior to the time that the impact occurred between

car number two and car number three is in dispute. Car number three struck car number two either by its own motion or by being pushed into car number two after having been struck in the rear by car number four (Osborne car).

Whether car number two and car number three had already collided when this impact occurred between car number three and car number four is also in dispute.

These disputed facts were the subject of conflicting testimony by the various drivers and witnesses.

In addition to respondents Kerrs' complaint against several owners and operators of the respective cars above mentioned, respondents Cochran and Turner cross-complained against appellants Cofer for personal injuries and car damage allegedly sustained in the collision between their cars.

The jury returned verdicts against appellants, allowing damages as follows:

"1. for personal injuries to plaintiff Herbert S. Kerr, $15,000.00;
"2. for personal injuries to plaintiff Eileen M. Kerr, $10,000.00;
"3. for the plaintiffs' auto damage, $1,250.00;
"4. for personal injuries to cross-complainant Norvall H. Cochran, $8,000.00;
"5. for personal injuries to cross-complainant Fay Turner, $10,000.00;
"6. for cross-complainants' auto damage, $805.46."

Appellants' motion for a new trial was heard and denied and judgment was entered on the verdicts. They then appealed to this court.[1]

The assignments of error raised by appellants will each be discussed in the order in which they are raised in their brief.

The first assignment of error is that the trial court commented on the evidence by giving instruction No. 12,

[1]Laverne Fabijan and his wife, who were originally named as defendants, were dismissed from the case on stipulation of all parties at the commencement of the trial. Hence, no further reference is made to them herein.

over the objection of appellants. A comment on the evidence by a trial court is forbidden by Const. Art. 4, § 16.

The instruction complained of reads:

"In this connection, I instruct you *that an operator of a vehicle that is struck in the rear and thereby pushed across the barrier stripes and into the oncoming traffic lane through no negligence on his part* is not guilty of negligence proximately causing a subsequent collision merely because his vehicle has been pushed across said barrier stripes and into the oncoming traffic. The burden of proof rests upon such operator to explain how he arrived on the wrong side of the highway without negligence on his part." (Italics ours.)

We conclude that the giving of this instruction was not reversible error. Our conclusion is based on two reasons. First, this specific instruction is not a direct comment on the evidence, within the meaning of the constitution, as interpreted by us in prior cases.

In *French v. Seattle Traction Co.*, 26 Wash. 264, 66 Pac. 404 (1901), at pages 269-270, this court stated:

". . . What statements of the judge, in his charge to the jury, with reference to the evidence, will, and what will not, amount to a comment upon the facts within the meaning of the constitutional inhibition, are questions not always easy of solution; but it cannot be meant by this clause of the constitution that the court shall not refer to the evidence at all. Necessarily, his charge must be based upon the evidence, and he must 'declare the law' applicable to that state of facts which the evidence of either party tends to establish. In order to do this, the judge must refer to the evidence in some manner. We have said he may make such references hypothetically; that is, he may state to the jury, 'If you find from the evidence that such a state of facts exist, the law is as follows,' etc., although he may not state or assume in his charge that any particular fact is conclusively proven. *Bardwell v. Ziegler*, 3 Wash. 34 (28 Pac. 360); *State v. Walters*, 7 Wash. 246 (34 Pac. 938.) If the judge may, in his charge to the jury, refer to the evidence thus indirectly, there would seem to be no very good reason why he may not do so directly; and we think, so long as the reference made does not amount to an explanation or criticism of the evidence, or assert or assume that a particular fact is proven thereby, it matters little what form the reference takes. . . ."

We believe that that reasoning applies to this case. In the *French* case, the critical sentence of the instruction, if taken out of the context of the whole instruction, would have been a comment on the evidence too. In that instruction, as in the instruction before us, the court clearly referred the question to the jury by another part of the same instruction. In the *French* case, the reference was direct. In this present case, the reference is made by use of the concept of burden of proof. The meaning of the instruction is substantially the same as stating the fact hypothetically by the standard phrases, "if you find that . . . then I instruct you . . ."

It is true that the italicized portion is worded as if the fact did occur. That reference, if it stood alone, might well have fallen within the ambit of *Sewell v. MacRae,* 52 Wn. (2d) 103, 323 P. (2d) 236 (1958). However, instruction No. 12 differs from the instruction involved in the *Sewell* case in a very important respect. In the *Sewell* case, the instruction included nothing to show that the question of whether the party was intoxicated was to be decided by the jury. It assumed the fact of the appellant's intoxication. In this present case there is a specific reference to the "burden of proof" being on a particular party. "Burden of proof" was defined by the court in an earlier instruction. Inherent in the concept of burden of proof is the existence of a fact question to be answered or decided. The jury was instructed in the general instructions that it, and it alone, was to decide the disputed questions of fact. The ordinary sense of these instructions was that the jury was to decide whether the collision did occur as described in instruction No. 12, and, if it so found, then the jury was to apply that particular rule. In other words, instruction No. 12 contains an adequate statement that the fact was to be determined by the jury.

A second reason for holding that instruction No. 12 is not prejudicially erroneous is based on the rule that instructions to a jury must be read as a whole. In *Zackovich v. Jasmont,* 32 Wn. (2d) 73, 200 P. (2d) 742 (1948), at pages 83 and 84, this court said:

"Instructions given by a trial court must, of course, be

considered as a whole, and if, when so considered, they fairly state the law, there is no prejudicial error, even though certain detached statements therein may be technically erroneous. [cases cited]

"Throughout the instructions, twenty-three in number, the trial court made it very plain to the jury that the principal issue in the case was whether or not the appellant had executed and delivered to the respondent the two notes here in question; and, further, that the burden of proving those facts by a fair preponderance of the evidence lay upon the respondent. . . .

"A reading of the instructions as a whole makes it clear, beyond cavil, that the trial court did not assume, nor indicate to the jury that it assumed, the existence of the two promissory notes, but expressly and definitely submitted that issue to the jury to be resolved by it, upon the evidence; it is equally clear that the jury could not possibly have been misled to infer that such fact was an established one, or that the trial court so considered it."

We believe the approach of the trial court in the case before us is the same as that in the *Zackovich* case. In this case the trial court gave 23 numbered instructions covering the issues and several possible forms of jury verdicts. Included in these instructions were variations of the uniform King County instructions pertaining to the duty of the judge not to comment on the evidence, and the responsibility of the jury to decide each factual issue in dispute. The court instructed the jury on the law applicable to the particular kind of automobile accidents which occurred in this case, and the concepts of negligence, proximate cause, and burden of proof. The court instructed the jury on the manner in which it was to weigh the evidence and the testimony of witnesses. It was in this context that instruction No. 12 was given. We conclude that if there were any doubt as to whether instruction No. 12, alone, could be considered a comment on the evidence, then the context in which it was given precluded the jury from having any such misunderstanding as claimed by appellants. The reasoning of the *Zackovich* case is applicable to the case at bar.

Appellants rely on *Ashley v. Ensley*, 44 Wn. (2d) 74, 265 P. (2d) 829 (1954), in support of their position. How-

ever, we think that a careful analysis of that case will show that it is consistent with our decision in this case, and that it does not, as contended by appellants, require a reversal of this case. Appellants point out that, in the *Ashley* case, the trial court gave an instruction which read as follows:

" 'I instruct you that you cannot return a verdict against the Defendant Cressey if you find that the Ensley car was not driven at a highly dangerous and reckless speed, unslackened in its approach to pass the Cressey bus.

" 'I further instruct you that you cannot return a verdict against the Defendant Cressey even if the Ensley car was thus approaching the bus, if at the time the Plaintiff minor stepped from the bus, the bus driver did not then know or in the exercise of reasonable and ordinary care would not have known that the car was then approaching at such high, dangerous and reckless rate of speed.' " (p. 77)

Appellants correctly observe that the *Ashley* case instruction was held to be erroneous because, in the second paragraph, the trial court assumed a material fact even though the first paragraph specifically reserved the determination of this factual question for the jury. Appellants insist that, because of the similarity of the *Ashley* instruction to the instruction in the present case, the instruction in this case is also erroneous. We think that there is an important distinction between the two cases, namely, in the *Ashley* case, we affirmed the granting of a new trial by the trial court. Here, we are asked to reverse the denial of such a motion. The *Ashley* case is not authority for the proposition that such an instruction would have been a ground for reversal if the trial court had refused to grant a new trial. The citations in that case show only that the trial court's order for a new trial was consistent with the law and authorities, and, therefore, should not be reversed. There is nothing in that case to show that the instruction would have been held to be a comment on the evidence if the trial judge had believed it was not.

In summary, we conclude that instruction No. 12 did not constitute a comment on the evidence in this case, for the reasons given above.

The appellants' second assignment of error is that the trial court erred in refusing to give a requested instruction that presented the appellants' theory of the case. Appellants also claim that this instruction would have served to offset the prejudice arising from the spotlighting of the collision between appellants' car and the car in front of it by calling attention to the collision between appellants' car and the car following it. This proposed instruction read:

"You are instructed that if you find that the automobile operated by Richard Osborne collided with the automobile operated by Martha Cofer, and that such collision was the sole and proximate cause of any injuries and damages sustained by Norvell H. Cochran and Faye Turner, then Norvell H. Cochran and Faye Turner can recover only from Richard Osborne for any injuries and damages sustained by them."

Appellants argued in their brief that no good reason existed for the refusal of the trial court to give the requested instruction. We do not agree. This proposed instruction was worded so that a jury could, and probably would, have understood it to mean that Mr. Osborne would be liable for injuries to Mr. Cochran and Mrs. Turner without regard to whether Mr. Osborne was negligent. This proposed instruction also failed to refer to the plaintiffs Kerr, thereby possibly implying no recovery for them from Osborne. We believe that the trial judge had ample reason to believe that this proposed instruction would instruct the jury erroneously regarding the law; therefore, we cannot hold that the trial judge should have given the requested instruction. *Bloomquist v. Buffelen Mfg. Co.*, 47 Wn. (2d) 828, 289 P. (2d) 1041 (1955).

The third assignment of error by appellants is that the trial court erred "in failing to grant their motion for dismissal of appellant Keith B. Cofer" from the action at the close of all the testimony. Appellants, in their brief, state their position as follows:

"The question presented by these facts is whether or not Mr. Cofer *and the marital community of appellants Cofer* can be held liable for a tort committed by Mrs. Cofer, where

the parties were separated at the time of the accident and the separation culminated in divorce. . . ." (Italics ours.)

The motion by appellants at the end of the trial was made in the following words:

". . . I move that the defendant Cofer be dismissed from this action on the ground that the pleading and the evidence now show although they were married, they are separated at this time and were divorced."

At the outset, respondents urged that this motion was ambiguous, and that it was unintelligible to the trial court; therefore, appellants failed to call this alleged error to the attention of the trial court, and failed to definitely point out their alleged claim of error in the assignments of error in their brief, as required by Rule on Appeal 43, RCW Vol. 0.

We agree that the motion in the trial court was ambiguous and that their third assignment of error did not refer expressly to the marital community. The question raised by respondent is answerable by determining what the trial court understood the motion to mean. If the trial court believed that the motion pertained to the Cofer marital community as well as Mr. Cofer, then the alleged error was called to the attention of the trial court, and the alleged error listed in the third assignment of error in the brief of appellants includes whatever action the trial court believed it was taking with regard to the motion referred to in the assignment of error.

In order that the unusual situation presented to the trial court and to this court may be understood, we deem it necessary to set forth in an appendix to this opinion pertinent portions of the discussion, the pleadings, and the evidence referred to in the motion. The record is not clear, for neither counsel nor court treated the subject with precision in their discussion. We gather, from the discussion between the trial court and counsel for appellants and plaintiffs-respondents, that the court understood the motion to mean two things; first, to dismiss Mr. Cofer, individually, and second, to dismiss the Cofer marital community, because the motion referred to pleadings and evidence that pertained

to marital status and existence of the marital community and agency for the community. We conclude that the trial court understood the motion sufficiently to call the alleged errors to its attention, and to preserve a claim of assignable error.

In order for the trial court to have granted appellants' motion as thus construed, the court would have to have found, as a matter of law, that (1) Mr. Cofer was not individually liable, either directly or vicariously, for the accident, and (2) that the Cofer marital community was not liable for the accident, because either the community did not exist at the time of the accident or, if it did exist, Mrs. Cofer was not acting for, or benefiting, the marital community.

First, with regard to the individual liability of Mr. Cofer, the court should have concluded that he was not liable as a matter of law. There was not even an allegation in the complaint or cross complaint under which Mr. Cofer could have been held liable, and there certainly was no evidence in the case on which any individual liability could be imposed upon him.

RCW 26.16.190 provides:

"For all injuries committed by a married woman, damages may be recovered from her alone, and her husband shall not be responsible therefor, except in case where he would be jointly responsible with her if the marriage did not exist."

This statute continues to express the rule in this state. *Sandgren v. West,* 9 Wn. (2d) 494, 115 P. (2d) 724 (1941); *Perren v. Press,* 196 Wash. 14, 81 P. (2d) 867 (1938). In fact, under the *Sandgren* case, this individual judgment against Mr. Cofer would be void, and could even be collaterally attacked because of the absence of pleadings to allege his individual liability. However, we need not go that far in our holding in this case since the issue of Mr. Cofer's individual liability was validly raised on appeal.

Since the record contains neither the requisite pleadings nor the proof to impose liability, the trial court erred in including appellant Keith B. Cofer, individually, as one of

the parties defendant against whom the judgment on the verdicts was rendered.

Second, as to the liability of the Cofer marital community, we believe that the trial court should have held the community not liable as a matter of law because the plaintiff failed to sustain his burden of proof.

The only evidence bearing on the issue of community liability was the testimony of Mrs. Cofer, which may be summarized as follows:

At the time of the accident she was married to Keith B. Cofer, but they were living separate and apart. She was driving a 1954 Ford automobile on her way to the Seattle-Tacoma airport to deliver a 3-year-old boy to his parents. He was in the back seat of the car. She was taking care of the child as a baby-sitter at the time. Between the time of the accident and the time of the trial (a period of 22 months), Mr. and Mrs. Cofer were divorced. There is no showing as to when the divorce was started or when the decree was entered.

In her testimony regarding the location of the 1954 Ford car on the highway and the other details of the accident, Mrs. Cofer referred to the car as "my car." She also mentioned two photographs of the car taken after the collision by "my husband." Mr. Cofer was not present at the time the accident occurred. None of this testimony had any bearing upon the issue of ownership of the car, because ownership of the car was not alleged, nor did the questions asked pertain to car ownership.

There was no testimony whatever as to when the Ford car was purchased or with whose funds. There was no testimony that, at the time of the accident, any property settlement agreement existed between Mr. and Mrs. Cofer relating to the ownership of the car, nor that Mr. Cofer had any knowledge that Mrs. Cofer was driving this car after their separation.

Paragraph 2 of appellants' answer was amended at the end of appellants' evidence, with the court's permission, so as to deny that a marital community existed or that Mrs. Cofer acted for the community. See appendix.

In this posture of the case, the burden was upon respondents to produce evidence tending to show that, in driving the Ford car at the time of the accident, Mrs. Cofer was acting as agent for, or for the benefit of, the community.

There was no showing by any of respondents that Mrs. Cofer's driving of the car was benefiting the community. The only evidence which showed the purpose of her use of the car was her testimony that she was baby-sitting. If Mrs. Cofer were earning money, it would be her separate property, because the Cofers were separated. See RCW 26.16.140. If Mrs. Cofer were not earning money for the community, how could her use of the car have been a benefit to the community? Respondents failed to show any connection between Mrs. Cofer's activity and the community interest.

There was no evidence of any kind to show that Mrs. Cofer was acting as agent for the community or on its behalf. The *presumption* is that the wife is not acting for or on behalf of the community, whereas the husband is *presumed* to be acting for or on behalf of the marital community. See *Jones, Rosquist, Killen Co. v. Nelson*, 98 Wash. 539, 167 Pac. 1130 (1917), and cases cited therein. As noted in the cited case, the only way in which the wife is *presumed* to represent the community is when she is acquiring family necessaries. In absence of the presumption, the plaintiff must prove the agency of the wife for the community.

Subsequent cases which have allowed recovery against the community for a tort committed by the wife have relied either on the activity of the wife in acquiring family necessaries or on the family car doctrine, when the car was owned by the community. See *Werker v. Knox*, 197 Wash. 453, 85 P. (2d) 1041 (1938), where the wife was acting on behalf of the community in a situation which was held to be analogous to purchase of family necessaries. See *Perren v. Press*, 196 Wash. 14, 81 P. (2d) 867 (1938), for an application of the family car doctrine. Respondents in this case failed to introduce any evidence tending to establish a prima facie case on either theory. They failed to show any basis for finding that the baby-sitting was done for or on

behalf of the community. They likewise failed to allege in the complaint or the cross complaint either the facts relevant to the family car doctrine or the ownership of the car. They failed to prove car ownership in anyone. Respondents' proof as to community liability clearly failed. The motion made by appellants, when coupled with their amendment to the pleadings during trial, raised the question of the adequacy of this proof in the trial court.

Appellants misconceive the grounds for the error, however. They cite only *MacKenzie v. Sellner*, 58 Wn. (2d) 101, 361 P. (2d) 165 (1961), and argue that the Cofer marital community did not exist at the time of the accident. Based on the proof in the record, we do not agree. In *MacKenzie v. Sellner, supra*, there was a voluntary, written property settlement agreement, which gave Mrs. Sellner, among other property, the car which she was driving at the time of the accident. Since each of the spouses in that case had gone his or her separate way, we held that the community did not exist, and hence the innocent spouse could not be penalized for the torts of the offending spouse.

In the case at bar, the situation is different. There is nothing in the record to show any agreement between Mr. and Mrs. Cofer which dissolved the community by a voluntary property settlement agreement which divided their community property. At the time of the accident, no divorce had been obtained, as was admitted in their answer. No evidence had been introduced to show how long the Cofers had been separated or whether they treated their property as separate or when the divorce complaint was served. The record does not show any of the facts which might be material to prove dissolution of the community. Hence, none of the factors which made reasonable the result in *Togliatti v. Robertson*, 29 Wn. (2d) 844, 190 P. (2d) 575 (1948), were present in this case. Mere separation by the parties, alone, does not dissolve the community even though divorce may follow later. Separation may make the proof of agency more difficult, however. The existence of the community and the agency of either spouse as to the

community are separate questions, which should not be confused.

Appellants have also argued, by implication, that RCW 26.16.140 shows that separation dissolves the marital community, because they cite this statute in conjunction with *MacKenzie v. Sellner, supra*, to show that the Cofer marital community was dissolved at the time of the accident. Appellants are incorrect. The statute merely states that the earnings of the wife are her separate property while she is living separate and apart from her husband. It has no effect on the status of property acquired prior to the separation, nor does it dissolve the marital community. The statute operates while the spouses are living separate and apart, and is effective regardless of whether there has been a dissolution of the community.

Appellants' fourth assignment of error is that certain hospital records should not have been admitted into evidence. Their brief states:

". . . Counsel for appellants objected on the grounds that the records contained conclusions and opinions of Mrs. Kerr's physicians, whose testimony had already been received in the trial, and that permitting the jury to take these repetitious reports with them into the jury room would be prejudicial to the defendants. This objection was overruled."

Appellants argue:

"An examination of Exhibit 83 reveals that it contains a secondary diagnosis of post-hepatitic liver insufficiency signed by Dr. Egglin, who, being an orthopedic surgeon, did not testify regarding this condition. Rather, it was Dr. Gunsul who had treated Mrs. Kerr for hepatitis and who testified as to its existence and consequences. Exhibit 84 contains the written diagnosis, findings, operative procedures and conclusions of Dr. Egglin and Dr. Gunsul, both of whom testified at length in the trial as to these matters."

This is followed by citation of *Young v. Liddington*, 50 Wn. (2d) 78, 309 P. (2d) 761 (1957), and a discussion of that case, and the comment:

". . . Where, as here, the record also contains a diagnosis not made by the doctor who signed Exhibit 83, that exhibit should have been rejected by the court below."

Respondents state that appellants failed to raise the issue at trial regarding the secondary diagnosis of "post-hepatitic" liver insufficiency signed by Dr. Egglin, but testified to by Dr. Gunsul, who had apparently made the diagnosis. Respondents also argue that, in such a situation, the trial court has discretion, and that its ruling is to be given much weight and will not be reversed unless there has been manifest abuse of discretion.

For those who will read this opinion, in order to understand it we set forth the following excerpts from the record:

"[Appellants' counsel]: On behalf of defendants Cofer we object to any portion of the hospital record which contains the conclusions of the doctor. We take the position that this is not within the scope of the business records rule. We feel that that rule is designed to allow receiving in evidence as a business record such things as temperature charts, nurses' notes, progress reports by nurses, and things like this. Now, permit me to add further, your Honor, the Court will recall that Dr. Egglund [*sic*] has testified in person, and Dr. Gunsul has testified by deposition. These hospital records which counsel now offer in evidence include conclusions and opinions of these doctors. These same two doctors. To permit this now to be received in evidence permits the jury to have before them in the jury room not only the written reports of the doctors, which is not [*sic*, probably should read now] accumulative because they have now heard these doctors testify to the same matters. We feel that this is prejudicial to the defendants.

"Your Honor, defendants would be permitted now to introduce no evidence, the written report of their examining doctor who has already testified here, we feel that it is prejudicial and especially harmful in permitting them to take this testimony into the jury room where they won't have the benefit of the conclusions of Dr. Mullins.

"The Court: Did you offer it?

"[Appellants' counsel]: We never did, your Honor.

"The Court: Well, let's get on with the testimony. Let me have those and I will try to study them while you are progressing."

Later, the following was recorded:

"The Court: Now, Gentlemen, there are two or three things. First, on these hospital records relating to Mrs. Kerr, I followed the policy that I always do, that I admit such portions of the record as may be signed or initialed by any one of the doctors who have testified here. My reason being that they have been here, they have been subject to cross examination, and therefore they are not hearsay statements. However, I notice in the record there are some parts of the record signed by some doctor other than the doctor who testified, and that part will have to be taken from the file. . . . It is my ruling that it is up to you to remove those from the record during the recess period. You can take that up between you. . . ."

These are the only relevant parts of the record, except for us to note that Dr. Egglin and Dr. Gunsul did each testify as represented by appellants. No objection was made to any relevant parts of their testimony that has been raised on this appeal.

We believe that the trial court understood the objection by appellants' counsel to be based on three different grounds.

(1) That the diagnosis given by one doctor and repeated in another doctor's report is not admissible because it is hearsay.

(2) That the diagnosis and conclusions and opinions of a doctor cannot come in as evidence as a part of the hospital record, apparently on the theory that they are hearsay, or that they are conclusions or opinions not supported by evidence in the report itself.

(3) That the conclusions and opinions of doctors who have already testified cannot come in as part of the hospital record because they are repetitive, and will prejudice the defendants because they cannot submit similar written reports of the defendants' doctor regarding the causation and diagnosis of the injuries of the plaintiff Mrs. Kerr.

The first two objections are based on *Young v. Liddington*, 50 Wn. (2d) 78, 309 P. (2d) 761 (1957), the only case cited by appellants to support this fourth assignment of error. As can be plainly seen from the excerpt from the record quoted above, the trial court placed on appellants' counsel the responsibility for removing the secondary

diagnosis of "post-hepatitic" liver insufficiency from the hospital record. Appellants cannot argue that the failure to remove this was the error of the trial court. The court ruled for appellants, according to the record, on objection No. 1, and if the item was left in, it was the fault of appellants.

The record shows that the court answered objection No. 2 in its discussion concerning why it followed the practice of admitting the reports of the doctors who had testified, namely that it no longer considered the conclusions and opinions as hearsay. Appellants have not argued that this was error in their brief.

With regard to objection No. 3, we have read the hospital records (Exhibits 83 and 84). We have read the testimony of Drs. Egglin, Gunsul, and Mullins. We find that the testimony of Dr. Mullins does conflict with the testimony of Drs. Egglin and Gunsul. However, the written reports of Drs. Egglin and Gunsul have no direct bearing on the matter in dispute between the doctors, and we find no prejudice to the appellants by the admission of these reports in the hospital record. If the court erred in admitting these reports, a question we expressly do not decide, the error was without prejudice, and, therefore, not reversible.

Appellants' fifth assignment of error is simply that the court erred in refusing to grant a new trial on any of the above grounds. Since we find that none of the grounds urged by appellants warrants a new trial, this assignment is without merit.

The judgment of the trial court is affirmed as to appellant Martha Cofer, individually, and reversed as to appellant Keith B. Cofer and the Cofer marital community, with directions to vacate the judgment as to them. Respondents will recover costs from appellant Martha Cofer, individually, only. Appellant Keith B. Cofer will recover taxable costs from respondents.

OTT, C. J., WEAVER and HAMILTON, JJ., and CUSHING, J. Pro Tem., concur.

APPENDIX

In response to paragraph 2 of plaintiffs' complaint, defendants' original answer admitted as follows:

"Answering Paragraph II, defendants admit their marital status and residence, as alleged, and admit that in driving the automobile at the time of the accident referred to in plaintiffs' complaint, defendant wife was acting on behalf of defendants' marital community. . . ."

During the trial, Mrs. Cofer testified as follows:

"Q. On April 21, 1961 [date of the accident] were you married? A. Yes. Q. And what was your husband's name? A. Keith. . . . Q. Mrs. Cofer, I would like to ask you several more questions. You, since this accident, have been divorced, have you not? A. Yes. . . . Q. When the accident occurred you had been living in Sumner, is that correct? A. Yes. Q. At the time of this accident, April 21, 1961, were you separated from your husband? A. Yes, I was. Q. Do you have any children? A. Yes. Q. How many? A. I have two at home but I have five girls [three married]. Q. Mrs. Cofer, where were you going to when the accident occurred? A. Going to the airport. I was babysitting a little boy. I went to pick up their [*sic*] folks. . . . Q. Was there anybody else in your car other than you and this boy in the back seat? A. No. . . ."

During the presentation of the defendants' case, their attorney moved to amend paragraph 2 of the answer referred to above. The following colloquy took place at that time:

"[Cofer's attorney]: . . . At this time on behalf of defendants Cofer I move for leave to amend our Answer to the Complaint so as to conform to the proof. To be more specific, we move the Court for leave to amend Paragraph II of our Answer to provide as follows:

" 'Answering Paragraph II of Plaintiffs' Complaint defendants Cofer admit that they were married but allege that they were separated at the time of the accident here involved' and everything set forth in said paragraph [*sic*].

"This comes, your Honor, from her testimony.

"The Court: The defendants Cofer admit their marital status?

"[Cofer's attorney]: Admit that they were married but allege that they were separated at the time of the accident involved in this lawsuit, therefore deny everything set forth in the paragraph, that this is a marital community.

"The Court: All right.

"[Plaintiffs' attorney]: Are you inclined to hear argument on this before you rule?

"The Court: I think this is only a matter which would come up later anyway. I do not see how it is going to make any difference anyhow. It will come up at the time judgment is rendered.

"[Cofers' attorney]: Is the Court reserving ruling on the motion?

"The Court: I will grant it. . . .

"[Plaintiffs' attorney]: Well, the only testimony that you have before your Honor is that they were separated at the time.

"The Court: All he is doing is asking leave now to amend his Complaint alleging that they were married but at the time of the

accident separated and living apart. That is all he is asking.

"[Plaintiffs' attorney]: All right."

At the end of all the testimony, the appellants' attorney moved to dismiss Mr. Cofer. The motion and the discussion were as follows:

"[Cofers' attorney]: . . . I moved that the defendant Cofer be dismissed from this action on the ground that the pleading and the evidence now show although they were married, they are separated at this time and were divorced.

"The Court: I will hear argument on that later on, I mean, depending on what the determination of the jury may be. . . . [Then followed some references to matters pertaining to other parties, followed by:]

"I could be inclined to deny that motion at this time because I don't think it has any bearing one way or the other. . . ."

*Reported in 396 P. (2d) 633.