[No. 32012. Department One. October 30, 1952.]

JAMES B. GUILES, *Respondent*, v. MARIANNE C. GUILES, *Appellant*.[1]

*Kennett, McCutcheon & Soderland* and *William J. McAllister*, for appellant.

*Lynch & Lynch*, for respondent.

SCHWELLENBACH, C. J.—This is an appeal from that portion of a final decree of divorce awarding the custody of the six and one-half year old daughter of the parties to the respondent husband.

The parties were married in Seattle November 27, 1937. The child was born April 14, 1945. The husband has been employed by the state employment security department for thirteen years. He was transferred to Olympia in December, 1946.

In 1939, they commenced having difficulty over sexual relations. The wife testified that she probably was more inhibited than her husband was; that he seemed more free about certain things than she; that he made remarks about

[1] Reported in 249 P. (2d) 368.

their anatomies that were repulsive to her. At one time, they both consulted a doctor concerning her condition, who said that there was nothing physically wrong with her. The matter culminated shortly after the birth of the child because of certain remarks made by him which were objectionable to her. She ceased having sexual relations with him June 9, 1947.

When the husband was transferred to Olympia, she remained in Seattle with the child. In the interim, they visited back and forth. He built a home, which was completed in January, 1949. She moved to Olympia the following June. In October, she returned to Seattle, taking the child with her. In January, 1950, the child was brought back to Olympia, where she has remained in the care of his mother. This was with the consent of both parties. The wife visited Olympia only about four times, but he took the child to Seattle on the average of every two weeks. The wife enjoyed those occasions when the parties were out together at gatherings where other people were present. However, when they were alone she became tense.

There is no question about the morality or conduct of either party. She testified that she did feel somewhat guilty about the fact that she was not doing her wifely duty. She also testified:

"Q. Why didn't you leave, then, before the child was born? A. Because I had always hoped up until this last June that we could reconcile ourselves. Q. On the condition that you set forth? A. I had hoped some day I might straighten out and be able to assume the life we had been."

Finally, the husband commenced this divorce action, stating he was planning to marry another woman.

The trial court granted a divorce to the husband on the ground of abandonment, and to the wife because of cruelty and personal indignities rendering her life burdensome. The court awarded the present custody of the child to the father. Its reasons are set forth in the memorandum opinion:

"The condition of the wife, be it mental, nervous or otherwise, cannot be defined from what appears in the record.

The nearest approach is the testimony of the wife when she states she hoped 'she might straighten out and cope with the situation.' However, a condition of such standing cannot be expected to dissolve or be corrected by divorce alone. There is nothing in the record to indicate that the wife presently has control of her emotions, that being the most apparent designation for her condition. And it must not be transmitted to the child of tender years, the innocent victim of the situation. In the respect indicated, *and in that respect alone*, the wife is presently unfit to have the custody of the child." (Italics ours.)

■ No citation of authority is necessary to support the rule that, in divorce cases where the custody of a child is at issue, the paramount concern of the courts is the welfare of the child, and, if the child is of tender years, its welfare will ordinarily be best served by awarding its custody to the mother. This is especially true if the child is a girl.

■ There is no question but that appellant's attitude and conduct toward respondent constituted grounds for divorce. However, there is nothing in the record to indicate that the appellant was ever emotionally upset at any times other than when she was alone with respondent. She has worked as a dental assistant off and on for seventeen years, and continuously since moving back to Seattle in October, 1949. It is difficult to see how she could have done this work in an efficient manner if she did not have control of her emotions. She testified that since the divorce proceedings were started, her relationship with her daughter has been wonderful, whenever they were together, and that she feels that they will get along beautifully in the future.

We can visualize a situation where a mother has lost control of her emotions because of sex difficulties with her husband, to such an extent that the emotions of the child might be affected thereby. She would then be unfit to have the custody of her child. Appellant is not in that condition. There is nothing in the record to indicate that, since the divorce was started, her association with her child has been anything other than the perfectly normal relationship between a mother and daughter.

The judgment is reversed and remanded, with directions to award the custody of the child of the parties to the appellant, and to grant proper visitation rights to the respondent.

MALLERY, GRADY, DONWORTH, and WEAVER, JJ., concur.

December 23, 1952. Petition for rehearing denied.