[No. 35580. Department Two. June 29, 1961.]

JOSEPH THOMAS, *Respondent,* v. CLARA THOMAS, *Appellant.**

*Reported in 363 P. (2d) 107.

*Geer, Rickabaugh & Billett,* for appellant.

*Frank J. Ruff,* for respondent.

DONWORTH, J.—This is an appeal from a divorce decree granted to respondent husband by the superior court of Pierce county.

The material facts of the case, which are largely undisputed, are summarized below.

Clara Thomas (appellant) and Joseph Thomas (respondent) were married in Bisbee, Arizona, in September, 1947, when they were both serving with the United States Army. No children have been born of the marriage. In 1949, the parties returned to civilian life and lived together in New York City for a year or two.

Respondent re-enlisted in the army in 1954 in Austria, and at the time of the trial was a sergeant in the United States Army, who had been stationed at Fort Lewis since 1956. Appellant resides in New York and has never lived with her husband in the state of Washington.[1]

The ground for divorce alleged in respondent's complaint is prescribed by RCW 26.08.020 (9), which provides:

"A divorce may be granted to either or both parties in all cases where they have heretofore lived or shall hereafter

---

[1] When appellant first enlisted in the army in 1942, he was domiciled in Pennsylvania. When he enlisted in Vienna in 1954, he gave his wife's home in New York City as his residence.

live separate and apart for a period of five consecutive years or more, without regard to fault in the separation."

With one exception, the parties have lived apart since 1951, the exception being a period of ten days in 1956, when respondent husband visited his wife in New York on his return from military service in Italy. The purpose of the visit was to discuss the future of their marriage before appellant reported for duty at Fort Lewis. While the parties slept under the same roof, conjugal relations were not resumed.

Since being stationed at Fort Lewis, respondent has resided off post the majority of the time with a family in Tacoma named Biggers. According to respondent's testimony, which was corroborated by that of Mrs. Biggers, respondent generally sleeps on a sofa in the living room. The exact rental arrangement seems rather flexible, with respondent paying from $25 to $30 per month, and also contributing services from time to time as a baby sitter for the Biggers. Respondent has registered the three different automobiles in this state which he has owned since being stationed at Fort Lewis. Besides testifying that he intended to make Washington his permanent home, respondent indicated that on different occasions he has talked with real-estate agents about buying property here in Washington.

The only witnesses who testified at the trial were Mrs. Biggers and respondent himself. Appellant did not appear in person but was represented by counsel. At the close of respondent's case, the court continued the matter for thirty days to allow appellant's counsel to take his client's deposition. For some reason not apparent from the record, appellant did not avail herself of this opportunity. No evidence was offered on appellant's behalf, and two and a half months after the original hearing the trial court entered its findings, conclusions and decree of divorce.

This appeal raises only two questions: (1) Was respondent a domiciliary of the state of Washington for at least one year prior to the commencement of this action in 1959, and

(2) did the parties live separate and apart for five consecutive years prior thereto?

 First, regarding the question of domicile, according to the provisions of RCW 26.08.030, a person must have been a resident of this state for a period of one year or more prior to filing his complaint for divorce. For purposes of jurisdiction, the term "residence," as used in the statute, has been construed to mean domicile. See *Sasse v. Sasse*, 41 Wn. (2d) 363, 249 P. (2d) 380 (1952); *In re Mullins*, 26 Wn. (2d) 419, 174 P. (2d) 790 (1946); and *Mapes v. Mapes*, 24 Wn. (2d) 743, 167 P. (2d) 405 (1946).

 While the authorities are in general agreement that a person in military service cannot acquire a new domicile simply because he is stationed at a military post in a particular state, this is not to say that a serviceman's domicile is frozen for the duration of his tour of duty. Military personnel *can* acquire new domicile while stationed at a military installation so as to provide a jurisdictional foundation for initiating a suit for divorce. See *Sasse v. Sasse, supra; Kankelborg v. Kankelborg*, 199 Wash. 259, 90 P. (2d) 1018 (1939); *Fiske v. Fiske*, 48 Wn. (2d) 69, 290 P. (2d) 725 (1955); and 21 A. L. R. (2d) 1163. Generally speaking, to establish a new domicile, physical presence in a state must coincide with an intention to make a permanent home in that state. Stated conversely, there must be a physical presence at a particular place coupled with the absence of any intention to establish domicile elsewhere. See 106 A. L. R. 14 and 159 A. L. R. 496.

In the *Fiske* case, *supra*, this court held that:

" . . . a member of the armed forces has the right to acquire a new residence while in the service, if he establishes a domicile off of the military post and resides there for the required time with the intention of making it his permanent residence. . . . [Citing the *Kankelborg* and *Sasse* cases.]"

While we find ourselves essentially in accord with the statement set forth above, we feel that the application of the rule cannot be reduced to a strict formula for establishing or proving domicile in all such cases. For instance, in-

tent (the second element of domicile) cannot be effectively reduced to a mathematical equation, *e.g.* house+voting+car registration=intention to permanently reside.

■ Whether a serviceman or anyone else intends to make a certain state his permanent home is a question for the trier of the fact to resolve after evaluating all of the relevant evidence, *e.g.* the plaintiff's own statement, where he lives, where he votes, where he registers his car, etc. No one fact should be conclusive. Essentially, the question is one of the plaintiff's credibility. Does he mean it when he says he intends to reside in this state permanently? Obviously, the more extrinsic and corroborative evidence he can introduce which is consistent with his stated intention, the more likelihood there is that the trier of the fact will believe him.

■■ The trial court specifically found:

"That for more than one year prior to the filing of his complaint herein, the plaintiff [respondent] had been and now is a resident of Tacoma, Pierce County, Washington."

While respondent's proof of domicile might not be regarded as overwhelming, we cannot say that the trial court's finding on this point is not supported by substantial evidence. Taken together, respondent's statement of his intention to reside in this state permanently, his registration of three automobiles at different times in Washington, his residence off his military post, and his discussions with real-estate agents concernng the purchase of property (which was corroborated by the testimony of his landlady) constituted sufficient proof of domicile to confer jurisdiction of the subject matter on the trial court. Where findings of fact are supported by substantial evidence, they will be accepted as verities by this court. See *DeBlasio v. Town of Kittitas*, 57 Wn. (2d) 208, 356 P. (2d) 606 (1960); *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn. (2d) 570, 343 P. (2d) 183 (1959); and *Wise v. Farden*, 53 Wn. (2d) 162, 332 P. (2d) 454 (1958).

■ Finally, appellant's contention that respondent's ten-day visit with her in New York in 1956 constituted a fatal

legal break in the five-year statutory period of separation prescribed by RCW 26.08.020(9) as a ground for divorce, is not well founded. The Washington cases cited[2] in support of appellant's position all deal with situations where the parties to the divorce action concededly lived in the same dwelling place with one another for most, if not all, of the five-year period. The situation in these cases is not to be confused with the fact pattern before us. Where the question has arisen, it has been held, as a general rule, that the statutory period for establishing a five-year separation as a ground for divorce is not broken by an occasional visit during which marital relations in any meaningful sense were not resumed. See 155 A. L. R. 140 and cases cited therein. A contrary rule would discourage married persons living apart from ever visiting each other in an attempt to reconcile their differences.

On this issue, also, the trial court's finding that the parties had lived separate and apart for a period of more than five consecutive years immediately prior to the commencement of this action is supported by substantial evidence. In fact, appellant offered no evidence in support of her denial of respondent's allegation in this respect. Although (as noted above) the trial court continued the matter for thirty days to afford appellant an opportunity to testify by deposition, she failed to avail herself of this privilege.

It should be stated that at the trial appellant was represented by counsel other than the counsel representing her on this appeal.

For the foregoing reasons, the judgment of the trial court is affirmed.

FINLEY, C. J., MALLERY, OTT, and HUNTER, JJ., concur.

---

[2] *Neff v. Neff*, 30 Wn. (2d) 593, 192 P. (2d) 344 (1948); *McNary v. McNary*, 8 Wn. (2d) 250, 111 P. (2d) 760 (1941).