[No. 115-40999-2.   Division Two.   June 3, 1970.]

DENNIS F. BRUNSON, *Respondent,* v. HATICE GULCIN BRUNSON, *Appellant.*

*Lynch & Lynch* and *Neil J. Lynch,* for appellant.

*Pebbles, Swanson & Lindskog, Ralph G. Swanson,* and *Robert E. Lundgaard,* for respondent.

ARMSTRONG, C. J.—Defendant wife, Hatice Gulcin Brunson, appeals from a decree of divorce granted plaintiff husband, Dennis F. Brunson. The grounds were cruel treatment and personal indignities rendering life burdensome. Defendant wife's challenge is threefold: (1) That the trial court lacked jurisdiction in that plaintiff was not a Washington resident for the requisite year; (2) that plaintiff failed to establish his grounds of cruel treatment and personal indignities rendering life burdensome; and (3) that if the grounds were established, plaintiff condoned defendant's wrongful conduct.

We believe that the trial court had jurisdiction of the parties and of the subject matter of the divorce action. The relevant statutory provision is RCW 26.08.030:

> Any person who has been a resident of the state for one year may file his or her complaint for a divorce under oath, in the superior court of the county where he or she may reside.

The term "residence", as used in the statute, has been construed to mean domicile. *Thomas v. Thomas,* 58 Wn.2d 377, 363 P.2d 107 (1961).

In the instant case, plaintiff was a member of the United States Army when he filed his complaint. As a serviceman, plaintiff's life has been extremely mobile. A brief recitation of his history is in order to determine plaintiff's domiciliary status.

In 1943 plaintiff enlisted in the United States Navy in Sioux City, Iowa, his parents' domicile. In 1952 he enlisted

in the army in Sioux Falls, South Dakota. In 1956 his parents moved to Washington which they maintained as their domicile until their deaths in recent years. In 1957 plaintiff purchased residential property in Richland, Washington. In 1963 he purchased residential property in Olympia, Washington. He owned no property at the time of this divorce.

The parties met in October of 1965 in Turkey, the home of the defendant, while plaintiff was serving there in the army. He returned to the United States in January, 1966 for release from the army at Fort Hamilton, New York. He testified that he then "went to Las Vegas, Nevada, to seek a divorce" and "resided in the State of Nevada for the time that they said". He secured the divorce from his previous wife on April 18, 1966 and married defendant on that same day. The parties returned to Turkey for a few months. They then returned to Washington where plaintiff reenlisted in the army on July 25, 1966. He was assigned to Lebanon, Ohio where the parties lived together until he was ordered to Fort Knox, Kentucky on April 17, 1967. Defendant moved to Milwaukee, Wisconsin where plaintiff visited with her for short periods of time. Plaintiff then received orders to Vietnam. While awaiting transportation, he returned to Milwaukee and visited with defendant for 5 days during the middle of December, 1967. He returned to Fort Lewis and commenced an action for divorce in Washington on January 3, 1968. Plaintiff's former wife continued to maintain a home for herself and their children at the Olympia, Washington residence purchased in 1963.

During the period of time from 1943, when plaintiff first enlisted in the navy, until January 3, 1968 when plaintiff filed his divorce action in Washington, his military records have shown various entries for his permanent home of record. Initially his home of record was Sioux City, Iowa. Thereafter there were entries setting forth his home of record as Richland and Olympia, Washington.

His discharge report showed his home of record as Richland, Washington when he was released from active duty

on January 25, 1966. Upon reenlisting on July 25, 1966, his home was listed as Olympia, Washington. A statement signed by the custodian of his service record, dated December 27, 1967, certified that plaintiff's records stated his home of record was 3720 Friendly Grove Road, Olympia, Washington. A form headed as a personnel data sheet dated August 19, 1968 (subsequent to the filing of the complaint for divorce) listed his home of record as Sioux City, Iowa —the place of his original enlistment.

From this somewhat confusing biography, it can be seen that plaintiff's contacts with the state of Washington are substantial in number and nature. From 1957 to the divorce, we see occurrences of physical presence within the state of Washington, statements implying an intent to establish himself as a Washington domiciliary, and actions demonstrating a Washington state orientation. This, coupled with his in-court statement that Washington "has always been my home", provides substantial evidence supporting the trial court's factual determination that plaintiff was a domiciliary of the state of Washington for a sufficiently long period of time to support the trial court's conclusion that it had jurisdiction of the parties and the subject matter under RCW 26.08.030. *Thomas v. Thomas, supra.*

The court stated in *Thomas* at page 380 that in order to establish domicile

> physical presence in a state must coincide with an intention to make a permanent home in that state. Stated conversely, there must be a physical presence at a particular place coupled with the absence of any intention to establish domicile elsewhere.

We find that there was substantial evidence that plaintiff affirmatively demonstrated his intention to make Washington his permanent home. We conclude that the trial court had jurisdiction of this action.

Defendant wife next contends that plaintiff failed to establish by a preponderance of the evidence the cruel treatment or personal indignities rendering life burdensome al-

leged as his grounds for divorce under RCW 26.08.020(5). We do not find this to be the case.

The testimony in this case was conflicting but plaintiff's version would substantiate the following facts: Defendant inflicted physical abuse on plaintiff by hitting him with her shoe on many occasions. She continually nagged and complained about plaintiff's devotion to his children by his former marriage and the amount of money he sent for their support. Defendant made false statements to his friends, his military superiors and strangers that plaintiff was beating her. The parties lived in constant turmoil and defendant's conduct was of a consistent pattern throughout the marriage.

Although most of plaintiff's testimony was controverted, we find that there was substantial evidence to support the trial court's findings of fact regarding the grounds for divorce. Where findings of fact are supported by substantial evidence they will be accepted as verities on appeal.

Defendant's last contention is that if her acts constituted cruel treatment and personal indignities rendering life burdensome, they were condoned by plaintiff. Defendant argues that the conduct which plaintiff complains about was of short duration and it was condoned by plaintiff. The most specific act of condonation argued by defendant is plaintiff's 5-day visit with her in Milwaukee while he was awaiting transfer by the army to Vietnam. At that time they lived together and he bought her a number of gifts. At various times he wrote her letters expressing his affection and discussing plans for the future.

We cannot accept this contention. In cases in which cruelty has been proved as a continuous course of conduct rather than a single act, the defense of condonation can be a bar only when there is actual forgiveness. In such cases there can be no condonation unless there is a reconciliation between the parties, a remission of the matrimonial offenses and an express agreement to forgive the course of conduct. *Stringfellow v. Stringfellow,* 56 Wn.2d 957, 350 P.2d

.1003, 353 P.2d 671 (1960). We do not find substantial evidence of condonation in this case.

, Affirmed.

PEARSON and PETRIE, JJ., concur.