[No. 685-1.    Division One—Panel 2.    January 11, 1971.]

Vera O. Stevens, *Respondent*, v. Richard D. Stevens, *Petitioner*.

*Knodel, Luce & Rasmussen* and *Kenyon E. Luce,* for petitioner.

*Richard Kelleher* and *Gary East,* for respondent.

Horowitz, A. C. J.—This court has heretofore granted petitioner's application for a writ of certiorari to review the court's decree granting a divorce to the parties and awarding to respondent custody of the two minor children of the parties. The matter is now before us on the merits.

The parties were originally domiciled in Washington. While so domiciled, they married in Seattle on May 6, 1967. Petitioner husband was a Boeing Co. employee. In September of 1967, the parties moved to Texas where petitioner continued to work for Boeing. The parties took their mobile home to Texas but left with relatives in Washington the

possessions for which they did not have room. While in Texas they lived in their mobile home. While in Texas, both family cars were licensed there and petitioner obtained a Texas driver's license. Both parties registered to vote in Texas, and voted in federal elections there; however, according to the testimony below, only petitioner voted in local elections. Copies of the voting registration papers were not offered in evidence. Additionally, both petitioner and respondent enrolled in college there as Texas residents.

Petitioner took pre-med courses there and decided to go to medical school. He applied for admission to a school in South Africa. While the application was pending, petitioner's job ran out and in January of 1969 he, his wife and children returned to Seattle. The evidence as to the purpose of the return to Seattle was conflicting. Petitioner testified that he returned there to await word from the South African school and once admitted, to take care of the possessions left in Seattle prior to going to Africa. Respondent testified, however, that the parties returned so that petitioner could work at Boeing in Seattle. Petitioner's application to medical school was denied. In September of 1969, he made plans to return to Texas and continue his medical training there. At this time, however, petitioner and respondent became estranged and respondent decided to stay in Seattle. They agreed that petitioner should have custody of their two minor children, both under the age of 4 at the time of trial. There was conflicting testimony on the question of whether respondent relinquished custody because she could not provide for them or because, as petitioner asserts, she did not want them and wanted to be free to be a "modern woman." Petitioner then returned to Texas for a brief period, then came back to Seattle, then left for Montana to find employment, and eventually moved to California where he is now working.

Respondent filed her complaint for divorce on December 3, 1969. At that time respondent had been physically present in the state since January 7, 1969, a period of less than

11 months. Petitioner contends that the marital domicile changed to Texas when they moved there, and that consequently, respondent did not satisfy the jurisdictional requirements, set forth in RCW 26.08.030,[1] that all plaintiffs in divorce actions "reside" in the state for 1 year.

█ Residence, as used in the statute, means domicile. *Thomas v. Thomas,* 58 Wn.2d 377, 363 P.2d 107 (1961). The statute as construed requires that the person filing the complaint must have been domiciled in Washington for 1 year, or more, prior to the date the complaint is filed; any period of residence after the date of filing cannot be used in computing the year. *Fiske v. Fiske,* 48 Wn.2d 69, 72, 290 P.2d 725 (1955); *Polk v. Polk,* 158 Wash. 242, 290 P. 861 (1930). If the statute is to be satisfied under the facts here, it must be shown that respondent's domicile was in Washington during the period that she and her husband lived in Texas.

█ To establish a domicile requires the physical presence at the place of intended domicile accompanied by the intention of making that place one's home. *Sasse v. Sasse,* 41 Wn.2d 363, 249 P.2d 380 (1952); *In re Estate of Lassin,* 33 Wn.2d 163, 204 P.2d 1071 (1949); *McCord v. Rosene,* 39 Wash. 1, 80 P. 793 (1905); *White v. Tennant,* 31 W. Va. 790, 8 S.E. 596 (1888). A domicile, once established, is not destroyed by a temporary absence no matter how long continued. *Sasse v. Sasse, supra; Marcus v. Marcus,* 3 Wn. App. 370, 475 P.2d 571 (1970); *White v. Tennant, supra.* Once acquired, domicile is presumed to continue until changed and the change must be shown by substantial evidence. *See Fiske v. Fiske, supra.* It is the generally accepted rule that a woman at marriage loses her own domicile, and acquires that of her husband, although she may acquire a separate domicile when living apart from her husband. *Buchholz v. Buchholz,* 63 Wash. 213, 115 P. 88 (1911); 25 Am. Jur. 2d *Domicil* §§ 48, 53 (1966).

---

[1] At the time respondent filed her complaint RCW 26.08.030 provided: "Any person who has been a resident of the state for one year may file his or her complaint for a divorce under oath, in the superior court of the county where he or she may reside."

In the instant case, the question for determination is whether the petitioner changed the matrimonial domicile to Texas and the answer depends primarily upon his intent. Intent is generally determined by objective events, and not the parties' subjective state of mind. *See Thomas v. Thomas, supra; DiMilia v. DiMilia,* 204 Pa. Super. 188, 203 A.2d 382 (1964); *Volmer v. Volmer,* 231 Ore. 57, 371 P.2d 70 (1962). However, the existence of domiciliary intent is an ultimate question of fact to be determined by the trial court. *Thomas v. Thomas, supra; Marcus v. Marcus, supra; Brunson v. Brunson,* 2 Wn. App. 809, 472 P.2d 586 (1970); *see also John R. Hansen, Inc. v. Pacific Int'l Corp.,* 76 Wn.2d 220, 455 P.2d 946 (1969). The trial court found that respondent was domiciled in Washington for the required 1 year period. We believe that finding is supported by substantial evidence. The parties' domiciles of origin and original marital domicile were in Seattle. They had family ties there. They retained a lot there which was originally purchased as a site for a house. Petitioner and respondent moved to Texas as a result of an interdivisional company transfer and the job in Texas was, at its inception, of a specific duration. It is a permissible inference from the evidence that petitioner's sojourn to Texas was temporary in nature and that he intended to keep Washington as his home. It is true that the uncontroverted evidence indicated that petitioner voted in federal, state, and local elections while in Texas. However, under the weight of authority, the act of voting is not necessarily controlling in determining domicile. It is only one factor, albeit an important one, to be considered in reaching a determination on domicile; it is sometimes persuasive, sometimes not, depending upon all the facts. Annot., 107 A.L.R. 448 (1937); *Thomas v. Thomas, supra; Clarke v. Washington Territory,* 1 Wash. Terr. 68 (1859); *DiMilia v. DiMilia, supra; Volmer v. Volmer, supra; see Fiske v. Fiske,* 48 Wn.2d 69, 290 P.2d 725 (1955); *Kankelborg v. Kankelborg,* 199 Wash. 259, 90 P.2d 1018 (1939). *Fiske,* in light of *Clarke* and the later *Thomas* case, cannot be interpreted as being to the contrary. The

trial court's finding as to domicile was supported by substantial evidence.

Petitioner assigns error to the trial court's third finding of fact that respondent never had an opportunity to care for the children and that both parents were fit and proper persons to have custody of the two minor children. Substantial evidence supports this finding. Because of the unique nature of a child custody proceeding, the trial court's finding on child custody is especially persuasive. *Patterson v. Patterson*, 51 Wn.2d 162, 316 P.2d 902 (1957). An appellate court will not substitute its judgment for that of the trial court except in the case of manifest abuse of discretion. *Barstad v. Barstad*, 74 Wn.2d 295, 444 P.2d 691 (1968). There was evidence that respondent had proper arrangements for the care of the children, including adequate physical facilities, employment and babysitting arrangements. In addition, respondent's pastor testified as to her good character and suitability as a mother.

In child custody proceedings the primary concern is the welfare of the children. *Barstad v. Barstad, supra; Applegate v. Applegate*, 53 Wn.2d 635, 335 P.2d 595 (1959). All factors affecting the child's interests should be considered "including the age and sex of the child, character and emotional traits of the spouses, physical care and moral and emotional environment to be provided the child by the respective parents . . ." *Barstad v. Barstad, supra* at 298; *Silverton v. Silverton*, 71 Wn.2d 276, 427 P.2d 1001 (1967). The "tender years" doctrine that the welfare of a child of tender years is normally best served by placing custody with the mother *(see Guiles v. Guiles*, 41 Wn.2d 377, 249 P.2d 368 (1952)) has been restricted. It is no longer applicable to school age children. *McCray v. McCray*, 56 Wn.2d 73, 350 P.2d 1006 (1960). In the case of preschool children, it is only one factor to be considered. *Barstad v. Barstad, supra; Patterson v. Patterson, supra*. While the court below found that both petitioner and respondent were fit persons for the custody of the children, it did not expressly find that the children's best interests

would be served by the award of custody to respondent. Evidence on the issue of the preferred custodian is essential and a finding thereon is important. In the instant case, however, the trial judge's oral opinion expressed his view that the welfare of the children would be best served if the children's custody was awarded to their mother. Where an express finding of material fact is not made, an appellate court may look to the oral decision of the trial court and, if it is consistent with the written findings, hold that the trial court determined the issue. *Saddler v. State*, 66 Wn.2d 215, 401 P.2d 848 (1965). The oral opinion indicates that the trial court determined that the welfare of the children would be best served by giving the children's custody to the mother. This determination is supported by substantial evidence.

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.