ROBERT P. LORD, PETITIONER *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2091–71.   Filed May 14, 1973.

*Woolvin Patten*, for the petitioner.

*Richard J. Shipley*, for the respondent.

FAY, *Judge:* Respondent determined the following Federal income tax deficiencies against petitioner:

| Year | Deficiency | Additions to tax | |
| --- | --- | --- | --- |
| | | Sec. 6653(b) | Sec. 6654 |
| 1961 | $4,483.86 | $2,241.93 | $119.49 |
| 1962 | 20,692.01 | 10,346.01 | 573.06 |
| 1963 | 8,940.68 | 4,470.34 | 243.08 |
| 1964 | 13,033.74 | 6,516.87 | 357.68 |
| 1965 | 12,916.02 | 6,458.01 | 354.38 |
| 1966 | 3,300.51 | 1,650.26 | 81.05 |

By an amendment to his answer, respondent has asserted, in the alternative, the following additions to tax:

ADDITIONS TO TAX

| Year | Sec. 6651(a) | Sec. 6653(a) | Year | Sec. 6651(a) | Sec. 6653(a) |
| --- | --- | --- | --- | --- | --- |
| 1961 | $1,120.97 | $224.19 | 1964 | $3,258.44 | $651.69 |
| 1962 | 5,173.00 | 1,034.60 | 1965 | 3,229.01 | 645.80 |
| 1963 | 2,235.17 | 447.03 | 1966 | 825.13 | 165.03 |

Petitioner admits his liability for the additions to tax provided by section 6651(a) of the Internal Revenue Code of 1954.[1] Moreover, most of the adjustments made in respondent's notice of deficiency have been conceded by petitioner. Only two issues remain for our consideration. These issues are (1) whether the income earned by petitioner during the period from January 1, 1961, through August 2, 1965, constituted community property income under the community property laws of the State of Washington for purposes of determining the amount of petitioner's taxable income from January 1, 1961, through August 2, 1965; and (2) whether petitioner's failure to pay his Federal income tax for the taxable years 1961 through 1966 is due to fraud, thereby making him liable for the additions to tax asserted by respondent under section 6653(b).

### FINDINGS OF FACT

Some of the facts have been stipulated by the parties; the stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Petitioner is an individual and his legal residence as of the date of the filing of his petition in the instant case was in Seattle, Wash.

Petitioner was born on May 17, 1916, at Pine River, Minn. He is a high school graduate and has also taken some college equivalency tests at Grinnell College in Grinnell, Iowa.

Petitioner married the former Marian McDonald (Marian) in Des Moines, Iowa, on September 6, 1937. Six children resulted from this marriage. Petitioner had several different jobs during the period from 1937 until 1960. He served in the Navy, worked for the U.S. Soil Conservation Service, and later functioned as a securities salesman.

On March 24, 1960, petitioner left his wife and children and moved to Seattle, Wash. This move was motivated by petitioner's financial, drinking, and family problems. Petitioner's parents lived in close proximity to Seattle, and he hoped that they could assist him in resolving his personal problems and in establishing a better life for himself.

Petitioner's first year in Seattle subsequent to the separation from his family was neither happy nor successful. He worked irregularly as a salesman on several used-car lots in Seattle. He had no permanent residence and continued to suffer from his alcoholic problem.

In 1961 petitioner obtained his real estate license and found employment selling recreational beach property for MacPherson's, Inc.

---

[1] All section references are to the Internal Revenue Code of 1954, unless otherwise indicated.

(MacPherson's), at Ocean Shores, Wash. He did not have a regular residence address during 1961.

Petitioner was promoted to the position of sales manager by Mac-Pherson's in 1962, and he continued his employment with MacPherson's through 1966. Petitioner established a regular residence address in Ocean Shores sometime during 1962 and became a domiciliary of the State of Washington at this time. Prior to 1962 petitioner had no intention of changing his State of domicile from Iowa to that of Washington.

From the commencement of the separation in 1960 until June 1964 petitioner neither contacted his wife and children nor contributed any money to their support. Petitioner's wife, Marian, made at least one attempt to contact him during this period but this attempt was unsuccessful. In June 1964 Marian learned of petitioner's precise location through a newspaper clipping. Marian then contacted petitioner, and he requested that she should not inform the children of his location. Despite this request Marian did tell the children where their father was then residing. Petitioner's son Bobby had wanted to contact petitioner for some time; upon learning his father's location, Bobby visited petitioner and stayed with him for approximately 6 months. During the period between June 1964 and August 2, 1965, Marian called petitioner several times and requested that he send money for support of her and the children. Petitioner promised to send money, but, in fact, he sent less than $1,000 to his wife and children during this period. Neither petitioner nor Marian denied or attempted to conceal the fact of their marriage during the years of their physical separation.

In 1965 Marian initiated proceedings to divorce petitioner. A final divorce decree was entered by the District Court of Cerro Gordo County, Iowa, on August 2, 1965. The divorce decree awarded Marian the sum of $20,000 as a property settlement and adopted the terms of the property settlement agreement in which petitioner agreed to satisfy his $20,000 liability to Marian in $200 per month increments.

Prior to the divorce, petitioner had acquired real property at Ocean Shores in his and Marian's name. Petitioner commenced acquiring such real property at Ocean Shores in 1962. Marian had no knowledge at the time of the divorce of petitioner's acquisition of such real property.

Petitioner failed to make the monthly payments required both by the divorce decree and the property settlement agreement. Marian thus instituted legal proceedings against petitioner in Grays Harbor County, Wash., to collect the backpayments. During these proceedings, Marian inadvertently discovered that petitioner had not disclosed

to her that he had acquired real estate at Ocean Shores between January 1, 1962, and August 2, 1965, and that he had disposed of some of this property by forging her signature on the deeds of conveyance. Marian accordingly apprised the Washington court of this factual discovery. On April 25, 1969, the Superior Court of Washington for Grays Harbor County entered a stipulated judgment on the basis that the 1965 Iowa divorce decree had not conclusively disposed of all property interests of petitioner and Marian. The stipulated judgment provided (1) that petitioner would be entitled to all real property in Washington which he had acquired in his and Marian's name; and (2) that petitioner would make specified monthly payments to Marian.

In the latter part of 1960 petitioner became involved with Jean Gerlach (Jean). This involvement continued through 1966. Petitioner recently married Jean.

During the taxable years 1961 through 1966 petitioner received the following amounts of compensation from MacPherson's due to his employment as a real estate salesman and/or real estate sales manager:

| Taxable year | Total commissions received by petitioner | Taxable year | Total commissions received by petitioner |
|---|---|---|---|
| 1961 | $16,488.29 | 1964 | $40,298.15 |
| 1962 | 46,316.60 | 1965 | 36,227.88 |
| 1963 | 30,274.91 | 1966 | 17,827.08 |

At the close of each of these taxable years MacPherson's furnished petitioner with a Form 1099 reflecting the amount of the commissions paid to petitioner during the involved taxable year.

Petitioner failed to file Federal income tax returns for each of the taxable years 1961 through 1966, and also failed to pay any of his Federal income tax liability for any of these years.

Petitioner was aware that he should have filed Federal income tax returns for the taxable years 1961 through 1966. Although the taxable year 1960 is not in issue, petitioner also did not file a Federal income tax return for that year. He did not file a Federal income tax return for the taxable year 1960 partially because he received only a negligible amount of income during that year and partially because of personal problems resulting from his alcoholism. He did not file Federal income tax returns for the taxable years 1961 through 1966 because of his fear of potential criminal prosecution and resultant imprisonment for his failure to file for the taxable year 1960; he was also afraid that a conviction for failure to file for 1960 might result in a loss of his job at MacPherson's.

During the taxable year 1962 the president of MacPerson's sent petitioner a letter reminding petitioner of his Federal income tax obligation and of his need to have cash available to pay this obligation.

Petitioner's social security number does not appear on any of the Forms 1099 furnished to him by MacPherson's. MacPherson's made several requests to petitioner to provide them with his social security number in order that they could complete their records and include this information on the Forms 1099. Although petitioner claims that he lost his social security card, he made no attempt either to ascertain his social security number or to obtain a replacement social security card.

During the taxable years 1961 through 1966 petitioner did not keep adequate, complete records of business selling expenses.

On one occasion petitioner brought a number of his business records to Seattle and rented a room in a hotel located across the street from the local Internal Revenue office. He intended to confess his failure to file and failure to pay his Federal income tax liability for the taxable year(s) preceding that occasion, but his fear of criminal prosecution precluded him from contacting the Internal Revenue Service. He made no subsequent attempts to rectify his tax affairs.

On March 27, 1969, an information was filed against petitioner at Tacoma, Wash., charging him with willful failure to file Federal income tax returns for the taxable years 1962 through 1966 in violation of section 7203. Petitioner entered a plea of guilty on September 29, 1969, to count 1 of this information, pertaining to the failure to file a Federal income tax return for the taxable year 1962. The U.S. District Court for the Western District of Washington entered its judgment of conviction on December 19, 1969, upon petitioner's plea of guilty and sentenced him to a fine in the amount of $2,500 and confinement in a jail-type institution for 3 months. Petitioner was also placed on probation for 5 years.

Since petitioner's departure from Iowa in 1960 Marian has been employed by Investor's Diversified Services and has supported herself and the children by herself. She has filed separate Federal income tax returns since 1958. She did not include any part of petitioner's income as her income on her Federal income tax returns for the taxable years 1961 through 1965. During the taxable years in question Marian had no knowledge of petitioner's income. Except for the less than $1,000 that petitioner provided Marian, Marian did not receive any part of petitioner's earnings during the period of time between 1961 and August 2, 1965.

ULTIMATE FINDINGS OF FACT

Petitioner acquired domicile in the State of Washington in 1962.

The separation of petitioner and Marian had matured from an ephemeral to a permanent status no later than 1962.[2] Although the marital relationship of petitioner and Marian was not legally dissolved until the divorce decree was issued on August 2, 1965, their marital community for community property purposes was substantively dissolved no later than 1962.

OPINION

The issues for decision are (1) whether petitioner's income earned during the period from January 1, 1961, through August 2, 1965, constituted community property or petitioner's separate property, and (2) whether petitioner's failure to pay his Federal income tax liability for the taxable years 1961 through 1966 was due to fraud.

With respect to the first issue, it is our position that the law of the State in which the earner of income is domiciled is the appropriate law to be utilized in determining whether such income constitutes community property or separate income. See *Marie R. Owens*, 26 T.C. 77, 88 (1956); *Marjorie Hunt*, 22 T.C. 228, 230 (1954). See also *Edward D. Lacey*, 41 T.C. 329 (1963). Accordingly, we must consider initially whether petitioner was domiciled in Washington or in Iowa during the years in which the income in issue was earned.

In *Thomas* v. *Thomas*, 58 Wash.2d 377, 363 P.2d 107 (1961), the Supreme Court of Washington stated that in order to change one's domicile, one must be physically present in the new State of domicile and that this physical presence must coincide with an intent to establish a permanent home in the new State. The court also suggested that the question of whether a person intends to make a specific State his permanent home is a determination that must be resolved by the trier of fact after all the pertinent evidence has been evaluated. *Thomas* v. *Thomas*, 363 P.2d at 110.

Respondent contends that petitioner never acquired domicile in Washington, but instead continued to remain a domiciliary of Iowa until the divorce decree was issued on August 2, 1965.[3] Petitioner con-

---

[2] The mutual disinterest expressed by both petitioner and Marian with respect to each other continued until the finalization of their divorce on Aug. 2, 1965. The year 1962 stands out because it was in this year that petitioner objectively manifested his intent to acquire domicile in the State of Washington.

[3] Respondent's contention was actually presented in an alternative manner. Respondent contended alternatively that even if petitioner did acquire domicile in Washington prior to Aug. 2, 1965, the community property law of Washington should be liberally construed as justifying the conclusion that petitioner's income earned during the years in issue was separate income. We agree with this latter argument of respondent and our analysis of this point may be found *infra* on pages 206–208 of this opinion.

tends that he acquired domicile in Washington no later than 1961. Petitioner supports this contention by the following arguments: (1) He was physically present in Washington in 1961; and (2) he intended to make Washington his home as of 1961, as is evidenced by the fact that he began to reside at Ocean Shores in 1961 and acquired a steady job with MacPherson's in 1961.

We are not persuaded by respondent's contention. However, we also reject petitioner's contention that he acquired domicile in Washington no later than 1961. The facts do not establish that petitioner intended as of 1961 to make Washington his permanent home. He did not have a regular residence address at Ocean Shores in 1961, but merely stayed at a motel. This is indicative of transiency and is not sufficient to show that he intended to reside permanently in Washington. Moreover, in view of petitioner's alcoholic tendencies and his irregular job patterns immediately prior to his employment with MacPherson's, the fact that he was employed by MacPherson's for several continuous months during 1961 does not prove either (1) that he intended to work for MacPherson's for any substantial period of time, or (2) that the securing of this job objectively manifested his intent to make Washington his permanent home.

We believe, however, that certain factual occurrences in 1962 are significant. Petitioner acquired a regular residence address at Ocean Shores in 1962. Although residence per se does not establish domicile,[4] it is objective proof of petitioner's intent to make Washington his permanent home. See *George D. Hampton, Jr.*, 38 T.C. 131, 133 (1962). Moreover, petitioner had worked regularly and competently for MacPherson's, and in 1962 he was promoted to sales manager for MacPherson's at Ocean Shores. Petitioner's increased job responsibilities at MacPherson's show that he now possessed a meaningful economic interest in Washington; this factor is an objective indication that petitioner had acquired during 1962 a viable reason for remaining permanently in Washington. Finally, petitioner commenced acquiring real property at Ocean Shores in 1962. The three preceding factors objectively establish that petitioner manifested an intent during 1962 to make Washington his permanent home. This conclusion is further substantiated by the additional facts that petitioner had not been back to Iowa since March 24, 1960, and had not contacted his wife or children since that time.

Accordingly, we hold that petitioner satisfied no later than 1962 both of the requirements enunciated in the *Thomas* case for establishing a new domicile and that he, thus, acquired domicile in Washington no later than 1962.

---

[4] See *Fuller* v. *Hofferbert*, 204 F.2d 592, 597–98 (C.A. 6, 1953).

Having determined the question of petitioner's domicile we must now consider the crucial issue of whether Washington's community property law requires that petitioner's income earned while he was a Washington domiciliary and prior to his divorce constitutes community property or petitioner's separate property.[5]

With the exception of property acquired by gift, devise, or descent, all income earned or property acquired after commencement of the marital community is generally characterized as community property under Washington law. See sec. 26.16.030, Wash. Rev. Code. However, this general rule has been flexibly construed by the Washington State judiciary. See *MacKenzie* v. *Sellner*, 58 Wash. 2d 101, 361 P. 2d 165 (1961); *In re Armstrong's Estate*, 33 Wash. 2d 118, 204 P. 2d 500 (1949); *Togliatti* v. *Robertson*, 29 Wash. 2d 844, 190 P. 2d 575 (1948); *In re Estate of Osicka*, 1 Wash. App. 277, 461 P. 2d 585 (1969). Thus, a marital community that has not been legally dissolved may still be considered to have been terminated under Washington community property law if both spouses have acted in a manner that clearly demonstrates that they have mutually renounced the marital relationship. See *In re Estate of Osicka*, *supra* at 588–589, citing *Rustad* v. *Rustad*, 61 Wash. 2d 176, 180, 377 P. 2d 414, 416 (1963).[6]

Petitioner argues that in the instant case there was neither an interlocutory divorce decree nor a written separation agreement, nor an oral renunciation or denial of the marriage by either spouse. Therefore, petitioner contends (1) that no "crystallizing factor" exists in the instant case that would clearly demonstrate that the spouses had renounced their marriage, and (2) that petitioner's earned income should accordingly be treated as community property for Federal income tax purposes. Respondent contends, in effect, that an interlocutory divorce decree, a written separation agreement, and an oral renunciation by the spouses of their marriage are merely exemplary

---

[5] Petitioner contends in effect that the burden of proof with respect to the community property issue in the instant case should be upon respondent. Petitioner supports this contention by reference to the position of the Washington courts that the burden of proof is upon the party who contends that property acquired by a member of a marital community during coverture is *not* community property. See, e.g., *Rustad* v. *Rustad*, 61 Wash. 2d 176, 377 P. 2d 414 (1963). We are not persuaded by this contention. It is the established position of this Court that a State law presumption in favor of community property does not relieve the taxpayer of his burden of overcoming the presumption of correctness that attaches to the Commissioner's determination. See *Herbert L. Damner*, 3 T.C. 638 (1944); see also *J. Z. Todd*, 3 T.C. 643 (1944).

[6] Sec. 26.16.140, Wash. Rev. Code, was amended during the January 1972 session of the Washington State Legislature to provide expressly that a husband's income earned during his permanent separation from his wife will constitute his separate property. Petitioner argues that since this amendment was not effective during the years in issue, petitioner's income in the instant case should be treated as community property. We disagree. We believe that Washington case law permitted a husband's income earned during his permanent estrangement from his wife to be characterized as his separate property; thus, the statutory amendment merely codified the trend of the existing Washington case law.

criteria, and not the exclusive criteria, for determining whether the spouses have exhibited that they no longer desire to maintain the marital community. Respondent further contends that the overt actions of the parties in the instant case manifested their intent to renounce the marital community and that petitioner's earned income should thus be characterized as separate property under Washington law. We agree with respondent.

Neither petitioner nor Marian evidenced any intent to maintain a viable marriage. In fact, their actions in specific instances and failure to act in other instances are inconsistent with such an intent. Petitioner made no effort to contact Marian and the children; he ultimately established himself as a domiciliary of Washington; he did not attempt either before or after his acquisition of domicile in Washington to move Marian and the children to Washington; he did not provide adequate support for Marian and the children; and he maintained a continuing involvement with another woman. Marian failed to make a concerted, active attempt to contact petitioner and further exhibited a total lack of interest in determining when and/or whether she would either join him in Washington or he would rejoin her in Iowa.

We do not feel that overt conduct such as an interlocutory divorce decree or a written separation agreement is required to dissipate the marital community in the instant case; to the contrary, the patent lack of interest displayed by the parties toward each other is clearly demonstrative that the marriage of petitioner and Marian was substantively dead. See, e.g., Cross, "The Community Property Law in Washington," 15 La. L.Rev. 640, 656–657 (1955).

Petitioner argues that *Kerr* v. *Cochran*, 65 Wash. 2d 211, 396 P. 2d 642 (1964), militates against the conclusion that the marital community in the instant case had dissolved prior to 1965. Petitioner cites the *Kerr* case for the proposition that separation alone does not dissolve the marital community. This proposition cannot be viewed in its isolated context. The court also stated in *Kerr* v. *Cochran, supra* at 650, that "The record does not show any of the facts *which might be material to prove dissolution of the community*." (Emphasis added.) The instant case is thus distinguishable from the *Kerr* case since there are sufficient facts in the instant case for establishing a *prior* dissolution of the marital community.

Finally, we believe that the dissolution of the marriage of petitioner and Marian under Washington community property law occurred no later than 1962. The separation of the parties entered its third year on March 25, 1962; the parties' lack of interest toward one another had become fixed attitudes by this time; and petitioner exhibited objective indications during 1962 of establishing domicile in Washington.

Therefore, we hold that petitioner's income earned from January 1, 1962, through August 2, 1965, constituted petitioner's separate property for Federal income tax purposes.[7] Since we have previously concluded that petitioner became a domiciliary of Washington no later than 1962, petitioner remained a domiciliary of Iowa prior to his establishment of his Washington domicile in 1962. Thus, since Iowa is not a community property State, petitioner's income earned in Washington prior to his becoming a Washington domiciliary in 1962 also properly constitutes his separate property for Federal income tax purposes. See *Marie R. Owens, supra,* and *Marjorie Hunt, supra.*

The second issue for disposition in this case is whether petitioner is subject to the fraud penalty imposed by section 6653(b).[8] In determining whether petitioner fraudulently intended to evade tax, we must consider the facts of the entire record. *Anson Beaver,* 55 T.C. 85, 92 (1970). The burden of proof with respect to the fraud issue is upon the respondent. Sec. 7454(a). Respondent must satisfy this burden by clear and convincing evidence. See *Anson Beaver, supra; William G. Stratton,* 54 T.C. 255 (1970); *Frank Imburgia,* 22 T.C. 1002 (1954). However, the requisite quantum of proof may be provided by circumstantial evidence. See *Powell* v. *Granquist,* 252 F. 2d 56, 61 (C.A. 9, 1958).

Petitioner in the instant case failed to file Federal income tax returns for the years 1961 through 1966.

Willful failure to file a timely return does not by itself establish petitioner's liability for fraud under section 6653(b). See *Stoltzfus* v. *United States,* 398 F. 2d 1002 (C.A. 3, 1968); *First Trust & Savings Bank* v. *United States,* 206 F. 2d 97 (C.A. 8, 1953).

In *Powell* v. *Granquist, supra,* the Ninth Circuit analyzed the taxpayer's failure to file in conjunction with other relevant facts in determining whether the fraud penalty was applicable.

We have examined all the relevant facts in the instant case and have concluded that respondent has not sustained his burden of proving fraud by clear and convincing evidence.

---

[7] We recognize that if petitioner's income earned during the years in issue constituted community property, the possibility exists that although Marian received less than $1,000 of this money, respondent could have used the mitigation provisions to open up Marian's closed taxable years and assess deficiencies against her for her unreported portion of the community income. See, e.g., *Karpe v. United States,* 335 F. 2d 454 (Ct. Cl. 1964).

[8] SEC. 6653. FAILURE TO PAY TAX.

(b) FRAUD.—If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse.

In his attempt to establish fraud, respondent has emphasized four factors: (1) Petitioner was aware of his obligation to file Federal income tax returns, as is evidenced by the fact that his employer wrote petitioner a letter in 1962 reminding him of his Federal income tax obligation; (2) petitioner's admission at trial that his failure to file returns during the years in issue was predicated on his fear that his failure to file a timely return for the year 1960 would be discovered, and that he would be subject to criminal prosecution and potential imprisonment for his failure to file a timely return for 1960; (3) petitioner did not keep adequate business records; and (4) petitioner failed to comply with his employer's request that he provide his employer with his social security identification number for inclusion on his Forms 1099.[9]

We believe that the last two factors can be plausibly explained by reasons other than a fraudulent motivation. Petitioner's behavioral patterns during his early years in Washington reflect that he was unstable and lacked a well-defined sense of responsibility. This observation is supported by petitioner's alcoholic tendencies and by his failure either to contact or provide adequate support for his family. We are persuaded that petitioner's failure to keep adequate business records and his procrastination in providing his employer with his social security identification number are merely additional manifestations of petitioner's underlying emotional problems and are thus not indicative of fraud.

With respect to the fact that petitioner was aware of his obligation to file Federal income tax returns during the years in issue but did not do so because of his fear that he would be prosecuted and punished for his failure to file for the year 1960, there is no doubt that an attempt to conceal a failure to file in a prior year does constitute *some* evidence of fraud. See *Stoltzfus* v. *United States, supra; Fred N. Acker*, 26 T.C. 107 (1956). However, petitioner also stated at trial that an additional factor underlying his fear of ultimate criminal prosecution and punishment for failure to file for 1960 was the anxiety that he would lose his job and would thus be thrust back into his prior pattern of job instability. This latter factor, when viewed in the perspective of petitioner's alcoholic tendencies and marital problems during the years in issue, creates considerable doubt as to whether petitioner had the intent to defraud which is requisite for supporting a determination of fraud.

---

[9] Respondent has also relied on the fact that petitioner pleaded guilty to the misdemeanor of willful failure to file. This is not conclusive but is only one of the evidentiary factors to be considered in determining if the record as a whole justifies a conclusion of fraud. See *First Trust & Savings Bank* v. *United States,* 206 F. 2d 97, 99 (C.A. 8, 1953).

Another factor which influenced our decision in petitioner's favor was that he cooperated fully with the Internal Revenue Service and made no attempt either to conceal or mislead. Compare *Powell* v. *Granquist, supra* at 59–60, where the Ninth Circuit states that "Powell made only a colorable attempt to cooperate with revenue accountants."

Although petitioner's overall behavioral patterns may be indicative of substantial moral deficiencies and although this is an extremely close factual situation, we are nevertheless convinced that respondent has failed to show by clear and convincing evidence that petitioner fraudulently intended to evade tax. We thus hold that petitioner is not subject to the penalty imposed by section 6653(b).

Finally, respondent, by amendment to his answer, asserted an addition to tax under section 6653(a).[10] Since this addition to tax constitutes new matter raised for the first time by respondent in an amendment to his answer, the burden of establishing the applicability of section 6653(a) in the instant case is upon the respondent. See Rule 32, Tax Court Rules of Practice; *American Ideal Cleaning Co.*, 30 B.T.A. 529, 531 (1934).

Petitioner has conceded on brief that he is liable for the addition to tax imposed by section 6651(a). It is this Court's position that the additions to tax under sections 6651(a) and 6653(a) may be imposed concurrently. See *Vahram Chimchirian*, 42 B.T.A. 1437 (1940); *Robinson's Dairy, Inc.*, 35 T.C. 601 (1961), affd. 302 F. 2d 42 (C.A. 10, 1962).

Petitioner admitted at trial that he intentionally disregarded his obligations to file Federal income tax returns and pay Federal income tax for the years in issue due to his fear that his failure to file a return and pay the concomitant tax for the year 1960 would be discovered. Although we have previously held in this opinion that petitioner did not have a fraudulent intent to evade tax, petitioner's admission establishes that his failure to pay his Federal income tax for the years in issue was due to his intentional disregard of rules and regulations. Accordingly, we hold that petitioner is liable for the addition to tax imposed by section 6653(a).

Finally, petitioner has failed to submit any evidence relating to the issue of additions to tax under section 6654(a) for underpayment of estimated tax. Accordingly, we decide this issue for the respondent.

*Decision will be entered under Rule 50.*

---

[10] Respondent also asserted an addition to tax under sec. 6651(a) by amendment to his answer. However, the question of the applicability of sec. 6651(a) is not at issue in the instant case since petitioner had conceded on brief his liability for the addition to tax imposed by sec. 6651(a).