RICHARD W. PADDOCK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Paddock v. Commissioner
Docket No. 19225-80.
United States Tax Court
T.C. Memo 1985-586; 1985 Tax Ct. Memo LEXIS 48; 51 T.C.M. (CCH) 17; T.C.M. (RIA) 85586; December 2, 1985. Richard W. Paddock, pro se. Ray K. Kamikawa, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined the following deficiencies and additions to tax: Additions to tax
Year
Deficiency
Sec. 6653(b) [1]
Sec. 6654(a)
1972
$4,346.58
$2,173.29
$140.05
1973
6,556.06
3,278.03
211.24
1974
12,878.25
6,439.12
414.94
1975
3,228.84
1,614.42
139.79
*50 The issues for decision are (1) whether petitioner is liable for the self-employment tax on his net earnings for the taxable years in issue; (2) whether petitioner is liable for an addition to tax pursuant to section 6654(a); and (3) whether any part of the underpayment for the years in issue is due to fraud or whether, in the alternative, petitioner is liable for the additions to tax pursuant to sections 6651 and 6653(a). FINDINGS OF FACT Pursuant to Rule 90(c) of the Tax Court Rules of Practice and Procedure[2], respondent requested petitioner to admit or deny certain matters. Petitioner failed to respond within the required 30-day period, and as a result, the statements in respondent's request are deemed admitted. Taxpayer failed to file Federal income tax returns for the taxable years 1972 through 1975. Petitioner (Mr. Paddock) resided in Kaneohe, Hawaii, at the time he filed his petition. During the years 1945 *51 to 1947, petitioner served in the United States Army Air Corps as a photographer. Following his discharge from the Air Corps, petitioner enrolled in several courses, including a bookkeeping course offered by the Standard Oil Company of California. After graduating from high school in 1949, petitioner enrolled in automotive courses at San Jose State College. During the years 1950 to 1976, petitioner was a self-employed Chevron service station operator. From 1950 to 1962, petitioner operated a service station in San Francisco, and in 1962 he moved to San Jose where he remained until 1970. In 1970 Mr. Paddock and his family moved to Hawaii where petitioner operated a Chevron service station in Waipahu. Petitioner continued to operate the Waipahu service station until February of 1976 when it was closed by Chevron, U.S.A., Inc. He leased another service station in Maili, Hawaii, until September of 1976 when the lease was terminated by Chevron. Petitioner was the sole proprietor of the Waipahu service station during the years in issue and, as such, was responsible for all record keeping, deposits of cash and receipts, finances, operations and compilation of records for tax return *52 purposes. Taxpayer submitted the records he maintained to his certified public accountant, Alex Chu, who used this information to prepare a Schedule C "Profit or (Loss) from Business or Profession" for each of the years in issue. Alex Chu provided petitioner with the Schedules C in time for Mr. Paddock to file timely Federal and state income tax returns. The specific items of income, deductions and not profit as shown on the Schedules C are summarized below. 1972
1973
1974
1975
Gross re-
$164,538.53 $173,619.88 $197,977.89 $210,857.40 ceipts
Cost of
(102,219.40)
(106,741.24)
(126,312.50)
(147,723.20)
goods sold
Deductions
(39,020.64)
(40,710.79)
(32,743.80)
(43,441.82)
Net profit
$ 23,298.49 $ 26,167.85 $ 38,921.59 $ 19,487.61 Petitioner did not file an income tax return for any of the years in issue although he knew that the Schedules C indicated taxable income for each year in issue. Mr. Paddock considered the data prepared by his accountant to be completely accurate. In fact, by petitioner's own account the Schedules C were prepared on the basis of daily records supplied by petitioner. Petitioner received *53 taxable income for the years in issue consisting of the items and amounts described below: 1972
1973
1974
1975
Business
$23,298.45 $26,167.85 $38,921.59 $19,487.61 income
Less: Moving
(625.50)
expenses
Adj. gross
$22,672.95 $26,167.85 $38,921.59 $19,487.61 income
Less: Itemized
deductions: Contri-
(403.00)
(557.00)
butions
Interest
(3,821.33)
(2,872.61)
(2,859.35)
(3,117.70)
Taxes
(1,535.56)
(1,130.88)
(1,365.93)
(1,472.14)
Less: Personal
(3,000.00)
(3,000.00)
(3,000.00)
(3,000.00)
exemptions
Taxable
$14,316.00 $19,164.36 $31,293.31 $11,340.77 income
On February 16, 1979, an information was filed in the United States District Court for the District of Hawaii charging petitioner with willful failure to file Federal income tax returns pursuant to section 7203 for the taxable years 1972, 1973, 1974, and 1975. On March 16, 1979, petitioner pleaded guilty to three counts of the information for the years 1973, 1974, and 1975. The charges with respect to the taxable year 1972 were dismissed. On May 29, 1979, Mr. Paddock was sentenced by the District Court to a prison term of 6 *54 months for each of the three counts with the sentences to run concurrently. Petitioner sold property in San Jose, California, which generated enough income for he and his family to live on for 4 years after moving to Hawaii. In addition, petitioner's service station business generated sufficient income to support his family during the period in question. Mr. Paddock borrowed money from his life insurance policy in order to purchase a second residence in Maili, Hawaii in 1976. Prior to 1972, petitioner had been a successful businessman who had diligently complied with his responsibility to satisfy his Federal income tax obligations on a timely basis. After moving to Hawaii, however, he began having an extra-marital affair and began to drink heavily. The problems that Mr. Paddock was having in his private life soon began to disrupt his business life and ultimately his employment contract was terminated by his employer. Petitioner failed to file Federal income tax returns or pay any portion of the income tax liabilities owing for the taxable years at issue. He also failed to make any estimated income tax payments during this period. For the two decades prior to the time petitioner *55 moved to Hawaii, he fully complied with his duty to file accurate and timely Federal and state income tax returns. In addition, Mr. Paddock filed gross excise tax returns with the State of Hawaii for 3 of the years in question. Mr. Paddock never set aside a fund that could have been used for the eventual payment of his outstanding tax obligations. OPINION The first issue for decision is whether petitioner is liable for the deficiencies in Federal income tax determined by the Commissioner. The Commissioner's determinations are presumed to be correct and petitioner bears the burden of proving them to be erroneous. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). The amounts of net profit petitioner earned as well as his tax liability for the years in issue, have been established pursuant to Rule 90(e). Rule 90(e) provides that "[a]ny matter admitted under this Rule is conclusively established unless the Court on motion permits withdrawal or modification of the *56 admission." Accordingly, we sustain the Commissioner's determinations of deficiencies in tax for the taxable years 1972, 1973, 1974, and 1975. We deal next with whether petitioner is liable for the self-employment tax for the years in issue. An individual who engages in a trade or business as a sole proprietor or as a partner must pay a tax on the "net earnings" [3] from all self-employment activities. Section 1401 et seq. The facts deemed admitted establish that petitioner derived "net earnings" from his activities as a sole proprietor. He is therefore liable for the self-employment tax in the amounts determined by respondent for each of the years in issue. We deal now with the issue of whether petitioner *57 is liable for the addition to tax under section 6654(a). An individual who underpays his estimated tax is made subject to an addition to tax based on the amount and duration of the underpayment. Section 6654. The addition to tax is determined by applying an annual interest rate, as set forth in section 6621, to the amount of the underpayment. [4] Paragraph 28 of respondent's request for admissions states that petitioner failed to make any estimated income tax payments for any of the taxable years in issue. This Court, therefore, has little choice but to uphold respondent's datermination of this addition to tax as computed in the notice of deficiency. [5]
*58 The next issue for our consideration is whether petitioner is liable for the addition to tax under section 6653(b)[6] for fraud. Whether a taxpayer acted fraudulently is determined on the basis of all the facts and circumstances. Stratton v. Commissioner,54 T.C. 255, 284 (1970). Respondent bears the burden of proving, by clear and convincing evidence, that some underpayment exists and that part of the underpayment in each year was due to fraud. Section 7454(a); Rule 142(b). This burden is satisfied if it is shown that the taxpayer "intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes." Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983); Stoltzfus v. United States,398 F.2d 1002 (3d Cir. 1968). The existence of fraud is a question of fact to be gleaned from a consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. *59 Beaver v. Commissioner,55 T.C. 85, 92 (1970). The fraudulent intent, however, may be proven by circumstantial evidence emanating from the taxpayer's entire course of conduct. Rowlee v. Commissioner,supra at 1123; Stone v. Commissioner,56 T.C. 213, 223-224 (1971). Taxpayer failed to file an income tax return for the taxable years 1972 to 1975, inclusive. [7] For 3 of the 4 years in issue, taxpayer entered a plea of guilty to a criminal charge of failing to file a Federal income tax return in violation of section 7203. We note that the intent to evade taxes is not an element *60 of the criminal offense charged under section 7203. That crime is complete with the willful failure to pay a tax, file a return, maintain records, or supply information. Section 7203. Thus, a conviction under section 7203 does not establish as a matter of law that petitioner failed to file a return with an intent, or in an attempt, to evade taxes. Wright v. Commissioner,84 T.C. 636, 643 (1985). Furthermore, it is well-established that a failure to file an income tax return is not, standing alone, proof of fraud on the part of the taxpayer. Rowlee v. Commissioner,supra;Cirillo v. Commissioner,314 F.2d 478 (3d Cir. 1963), affg. in part and revg. in part a Memorandum Opinion of this Court. Although the failure to file tax returns is evidence that may be considered as indicative of fraud, such an omission "may be consistent with a state of mind other than the intention and expectation of defeating the payment of taxes." Rowlee v. Commissioner,supra at 1123. *61 There is some question as to what respondent must show, in addition-to a taxpayer's failure to file, in order to prove the requisite intent to defraud. In the landmark case of Spies v. United States,317 U.S. 492, 498 (1943), the Supreme Court held that there can be no criminal fraud unless there is some affirmative conduct (i.e. a commission) intended to evade, mislead, or conceal. Such conduct must be in addition to any of the omissions already punishable by the criminal sanctions found in section 7203. Spies v. United States,supra at 499. The Spies test has been followed in civil fraud cases involving the willful failure to file tax returns in the Eighth Circuit ( First Trust & Savings Bank v. United States,206 F.2d 97 (8th Cir. 1953)), the Fifth Circuit ( Jones v. Commissioner,259 F.2d 300 (5th Cir. 1958), revg. and remanding 25 T.C. 1100 (1956)), and most recently the Tenth Circuit ( Zell v. Commissioner,763 F.2d 1139 (10th Cir. 1985), affirming a Memorandum Opinion of *62 this Court). A second less restrictive test has been adopted by the Third Circuit requiring, in addition to petitioner's failure to file, merely an "affirmative indication" of taxpayer's intent to evade the tax. Stoltzfus v. United States,398 F.2d 1002 (3d Cir. 1968); Cirillo v. Commissioner,supra.Both the Stoltzfus and Cirillo courts found fraud where the failure to file a tax return was accompanied by something less than the type of "affirmative conduct" required by Spies. In Cirillo, petitioner's failure to keep books and records was, when coupled with a long period of non-filing (10 years) enough of an "affirmative indication" of an intent to evade tax to justify imposition of the addition for fraud. Cirillo v. Commissioner,supra at 483. In Stoltzfus, the Third Circuit held that a convincing affirmative indication of an intent to defraud was present where the taxpayer's willful failure to file tax returns for 16 consecutive years was combined with a knowledge on his part that a tax was owing for *63 each of the years in issue. Stoltzfus v. United States,supra at 1005. [8]
*64 We do not need to decide which of the two approaches described above is appropriate in the instant case because respondent failed to sustain his burden of proof under either the Spies test or the Cirillo-Stoltzfus test. According to the Spies standard, petitioner would not be liable for the addition to tax for fraud because he did not engage in any affirmative conduct evidencing an intent to evade a tax. Although respondent alleges that petitioner purchased certain assets during the period in question, this evidence was proffered solely to contradict Mr. Paddock's claim that he failed to file tax returns because he lacked funds with which to satisfy his tax liabilities. Respondent did show that petitioner's failure to file was with knowledge of his reporting obligations and with knowledge that a tax liability was owing. However, failure to satisfy even a known duty to file a tax return and pay a tax does not involve the type of conduct required to satisfy the Spies test. [9]
*65 We further believe that respondent failed to prove fraud by clear and convincing evidence under the more liberal "affirmative-indication" test. Although the Third Circuit found fraud in Cirillo and Stoltzfus, both of those cases can be distinguished from the instant case. In Cirillo v. Commissioner,314 F.2d 478, the taxpayer failed to file a tax return for 10 consecutive years, a period substantially longer than the 4-year non-filing period in the instant case. Furthermore, Mr. Cirillo was an attorney who earned taxable income both as a municipal employee and through the private practice of law. In addition, the taxpayer in Cirillo failed to maintain adequate books and records. Such a failure, when coupled with his failure to file tax returns over a sustained period, greatly increased the problems confronted by respondent in uncovering the taxpayer's misdeeds and in reconstructing his taxable income for the years in question. The Supreme Court has said that the addition to tax for fraud was intended, in part, "to reimburse the Government for the heavy expense of investigation" resulting from the taxpayer's fraud. Helvering v. Mitchell,303 U.S. 391, 401 (1938). *66 In the instant case, petitioner maintained meticulous records during all of the years in issue. These detailed records were ultimately turned over to and incorporated by respondent into his statutory notice of deficiency. In Stoltzfus v. United States,398 F.2d 1002, the Third Circuit held that non-filing, when coupled with the taxpayer's knowledge that a tax was owing during all of the years in issue, was sufficient to establish an inference of the requisite specific intent to defraud. In Stoltzfus, unlike the instant case, the taxpayer's failure to file extended over a 16-year period. Certainly the inference drawn from a taxpayer's failure to file is made stronger and more compelling by virtue of the sheer length of the non-filing period. Thus, we believe that, as an indicia of fraud, a failure to file tax returns has a quantitative as well as a qualitative component. In the instant case, although Mr. Paddock's failure to file a tax return can create an inference of fraud when coupled with his knowledge that he owed tax during the years in issue, that inference is made weaker by virtue of the shorter non-filing period and the other mitigating facts and *67 circumstances. Petitioner was a forthright and credible witness and although his actions were clearly dilatory and remiss, they do not rise to the level of deception and guile necessary for a finding of fraud. Mr. Paddock had been a successful businessman for nearly a quarter of a century. After moving from California to Hawaii in 1971, however, petitioner's business and personal affairs began to deteriorate rapidly. The evidence indicates that towards the end of the period in question, petitioner became involved in an extra-marital affair and drinking heavily. Ultimately, both his marriage and his career as a service station operator came to an unhappy conclusion. Petitioner's personal problems during the years in issue were manifested in his unfortunate tendency to over-extend himself financially. His service station was ultimately closed by Standard Oil Company in 1976 because he used gas receipts for personal expenditures. We believe from Mr. Paddock's testimony and from the relatively short non-filing period that he would eventually have made efforts to satisfy his outstanding obligations to respondent as his business and personal affairs improved. This Court has recognized *68 that an intent to avoid the payment of tax can be distinguished from an intent merely to postpone the payment of tax. Rowlee v. Commissioner,80 T.C. 1111, 1124 (1983). [10]
Petitioner was exceptionally diligent in maintaining complete and accurate records of his gross income and expenditures during the years in issue. Mr. Paddock furnished these records to the investigating agents and they were ultimately incorporated into respondent's statutory notice. The maintenance of detailed financial records during the period in question and the prompt surrender of those records is certainly not indicative of an intent to defraud. [11]
*69 The taxpayer in the instant case diligently complied with his tax obligations for all but 4 of his 25 years of professional life. Mr. Paddock's failure to file tax returns for the years in issue, rather than being indicative of an intent to defraud, is merely reflective of the chaos that was occurring in his life during the period in question. As we later hold, petitioner's conduct was negligent, but negligence is not fraud and respondent's attempt to impose fraud under these circumstances is draconian. We hold that, taking all of the circumstances into account, respondent has not satisfied his burden of proving, by clear and convincing evidence, that some part of the underpayment for each year was due to fraud. Section 7454(a); Rule 142(b). Respondent argues, in the alternative, that petitioner is liable for the additions to tax under sections 6651(a)(1) and 6653(a) for each of the 4 taxable years in issue. Because these assertions were raised by affirmative allegation in respondent's amended answer, respondent bears the burden of proof with regard to these issues. Rule 142(a). Here, there is sufficient evidence in the record to satisfy respondent's burden as to both additions *70 to tax. Section 6651(a)(1) provides that an addition to tax will be imposed when a taxpayer fails to file his Federal income tax return unless such failure is attributable to reasonable cause and not willful neglect. As noted above, petitioner was convicted under section 7203 for willful failure to file a return for the taxable years 1973, 1974, and 1975. As to these years, the doctrine of collateral estoppel [12] applies and we are required to find as an established fact that petitioner's failure to file was willful. Gemma v. Commissioner,46 T.C. 821, 834 (1966). The circumstances surrounding petitioner's failure to file a Federal income tax return in 1972 are no different and we therefore find that petitioner's failure to file returns for all 4 years in issue was willful. Consequently, respondent's determination that petitioner is liable for the 6651(a)(1) addition to tax for each of the years in issue will be sustained. *71 Section 6653(a) provides for an addition to tax equal to 5 percent of the total underpayment [13] if any portion of the underpayment in income and gift tax is due to negligence or intentional disregard of the rules and regulations.Petitioner's dutiful compliance with both his filing and his remittance obligations for the years preceding 1972 implies that Mr. Paddock was clearly cognizant of his Federal tax obligations. In addition, the evidence indicates that petitioner received Schedule C worksheets from his accountant which, by petitioner's own admission, indicated that there would be tax due for each of the 4 years at issue. Although we have concluded that petitioner's failure to file does not evidence the intent to conceal necessary for a finding of fraud, that failure to file does support a determination of negligence or intentional disregard of the rules and regulations. Respondent's finding that petitioner is liable for the addition to tax under section 6653(a) for each of the 4 years in issue must therefore be sustained. *72 To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue.↩
2. Unless otherwise indicated, all rule references are to the Tax Court Rules of Practice and Procedure.↩
3. The phrase "net earnings from self-employment" is defined in sec. 1402(a)↩ to mean "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business * * *."
4. The "underpayment" as defined in sec. 6654(b)↩, is equal to 80 percent of the difference between the actual tax and the amount, if any, of all installments paid on or before the due date. Saltzman, IRS Practice and Procedure par. 7.11 [1] p. 7-84 (1st Ed. 1981.) 5. We note that there is no language in sec. 6654 relating to reasonable cause or lack of willful neglect and therefore extenuating circumstances have no relevance. Estate of Ruben v. Commissioner,33 T.C. 1071, 1072↩ (1960).
6. Section 6653(b) provides as follows: (b) Fraud.--If any part of any underpayment * * * of tax * * * is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a) * * * [relating to negligence or intentional disregard of the rules and regulations regarding the payment of income or gift taxes.]↩
7. Although it was deemed admitted that petitioner failed to file a Federal income tax return in 1971, that taxable year is not before this Court. Furthermore, Mr. Paddock provided testimony at trial, which we believed, that he did in fact file a tax return in 1971.↩
8. The Court of Appeals for the Ninth Circuit, the circuit to which an appeal in the instant case would lie, has specifically declined to decide whether the Spies test is the appropriate one to follow in a failure to file context. Powell v. Granquist,252 F.2d 56 (9th Cir. 1958). In Powell v. Granguist,supra, the taxpayer failed to file Federal income tax returns for the years 1937 through 1945. The court in Powell found the following facts, not present in the instant case, to be indicative of fraud: 1) The taxpayer was informed of his duty to file income tax returns, and the only answer given for his failure to file was that he did not approve of the manner in which the tax revenues were being spent by the Federal Government. 2) The taxpayer maintained no formal books, and upon a request by revenue agents to produce his records he complied by producing only his cancelled checks and bank statements. 3) The taxpayer failed to cooperate with the Internal Revenue Service by refusing to turn over the records he had relative to certain transactions that he was involved with as a real estate broker. The taxpayer lied by telling revenue agents that he had no such records and only finally complied with their specific requests after it was apparent that the revenue agents had discovered the existence of these transactions through other means. Because the Powell court relied on these factors, it remains unclear whether the Ninth Circuit would find fraudulent intent from a willful failure to file in the absence of these other indications of fraud. In a later case, the Ninth Circuit again found fraud in a case involving the willful failure to file tax returns. Lord v.Commissioner,525 F.2d 741, 745 (9th Cir. 1975), affg. in part and revg. in part 60 T.C. 199 (1973). The facts in Lord, however can be distinguished from those of the instant case. The Lord case involved a taxpayer who failed to file a Federal income tax return for 6 consecutive taxable years. In addition to the willful failure to file tax returns, the court found persuasive the fact that the taxpayer failed to keep records or to retain receipts during the years in issue. In addition, he refused, over a 6-year period to provide his employer with his correct Social Security identification number. Furthermore, the taxpayer in Lord↩ was warned by his employer to pay his taxes and to cease his extravagent life style. Mr. Lord's only explanation for his failure to file was his fear that he would lose his job and face a possible prison term.
9. Respondent argues on brief that a number of minor misstatements made by petitioner at trial amount to significant misrepresentations. These misstatements had to do with the accuracy of the Schedules C prepared by Mr. Paddock's accountant, a wristwatch purchased by petitioner and given to a female acquaintance, and the source of the funds used by petitioner to purchase a house in Maili, Hawaii. We believe that the effect of these misstatements on respondent's investigation was negligible and that they lend little weight to respondent's contention that petitioner's failure to file returns and pay tax was motivated by a specific intent to defraud the Government.↩
10. See also Anderson v. Commissioner,T.C. Memo. 1973-155 and Morrell v. Commissioner,T.C. Memo. 1971-99↩.
11. Respondent argues on brief that petitioner refused to cooperate during the investigation because he was unwilling to stipulate to known facts. We note that Mr. Paddock represented himself in these proceedings. Because of petitioner's lack of sophistication and because of his willingness to cooperate by surrendering to respondent his books and records for the years in issue, we are unwilling to view Mr. Paddock's failure to stipulate as indicative of fraud.↩
12. The doctrine of collateral estoppel is intended to avoid repetitious litigation by precluding the relitigation of any issue of fact or law that was actually litigated and that culminated in a valid and final judgment. Montana v. United States,440 U.S. 147, 153 (1979); see Restatement, Judgments 2d, sec. 27 (1982). The doctrine will only apply to situations in which the matter raised in the ensuing suit is "identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." Commissioner v. Sunnen,333 U.S. 591, 599-600↩ (1948).
13. An "underpayment" is generally defined in the same manner as a "deficiency" (essentially the correct tax minus the reported tax) except that the amount reported on a late return does not reduce the amount of the underpayment. Sec. 6653(c)(1)↩.